# Richmond

## JOSEPH F. McCALL v. COMMONWEALTH OF VIRGINIA.

June 18, 1951.

Record No. 3836.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*James N. Garrett,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

Joseph F. McCall, hereinafter referred to as the defendant, was indicted for the rape of Barbara Anne McGee, a female child of the age of nine years. Code, § 18-54. Upon completion of the Commonwealth's evidence the defendant moved to strike it as insufficient to establish the crime of rape. The motion was overruled and the defendant stood upon this motion and offered no evidence. The jury found the defendant guilty as charged in the indictment and fixed his punishment at twenty-five years in the penitentiary. A motion to set aside the verdict was overruled, judgment entered, and the defendant sentenced in conformity with the verdict.

The single question presented to us is whether the evidence is sufficient to sustain the verdict and judgment of conviction.

On October 1, 1949, her parents gave Barbara Anne McGee

a party at their home in Norview, in Norfolk county, on the occasion of her ninth birthday. Several grownups, including the defendant who had been a friend of the family for some time, attended. While the party was in progress the child's parents left their home and did not return until about 6:00 p. m. When the party was about over, the defendant, with the permission of Barbara's grandparents who were left in charge of the children, took Barbara, Brenda Phelps, aged seven, and Ronnie Marco, aged four, in his automobile to get Coca-Colas at a near-by confectionery.

When Barbara's parents returned to their home and found the children absent they went to look for them at the neighboring confectioneries, but were unable to find them. Finally, the defendant drove up to the McGee residence with the three children and put them out there in the presence of Barbara's grandfather, but without getting out of the car.

There is a conflict in the evidence as to when the defendant returned with the children to the McGee home. Mr. McGee fixed the time at "around 7:00 o'clock," while his wife said it was "somewhere between 7:30 and 8:00." The arresting officer testified that he particularly noted that the complaint was registered with him at 7:00 p. m. At any rate, the children were with the defendant for approximately an hour.

Mrs. McGee testified that as soon as her daughter came into the house she noticed that the child had a "most peculiar look," that she "asked Barbara what had happened and she told me." Mrs. McGee then examined the child and found that her vagina was "red and raw and irritated from the outside."

The child was taken immediately to DePaul Hospital, in the city of Norfolk, where she was examined by Dr. N. S. Payne. The physician testified that the child was "rather pale, crying, very nervous, and she complained of being sore in her privates." His examination revealed that there had been a penetration of her genital organs within two or three hours of his examination which was approximately at 8:00 p. m. On direct examination he stated that he was unable to say "what produced the condition."

Chemical, physical and microscopic examinations were made of the child's clothing and no sperm or seminal fluid were found thereon. Nor was any found in her sexual organs or on her body.

When the car left the McGee residence the defendant and

the three children occupied the front seat and continued to do so until their return.

According to Barbara, they drove to a near-by confectionery and had Coca-Colas, after which the defendant drove them behind a church to see the rabbits which were kept there. Ronnie, the little boy, had expressed a desire to see the rabbits, but neither of the girls was interested in them, so they did not get out of the car.

Barbara further testified that the defendant locked the doors of the car and put her on his lap, facing him, while the other two children were seated beside them. Upon being asked, "What happened then? Go on and tell us exactly what happened," her reply was, "Then he went on the first street and then he done it to me and we went on home." Upon being pressed by both the attorney for the Commonwealth and the court to tell "exactly" what had taken place and what the defendant had done to her, her only reply was, "He done that to me." Again she was asked, "Can't you tell us what he did?" to which she replied, "No, sir."

Upon being asked how she was clothed she said, "I had a slip, my shirt and my pants." Her pants were not removed, she said. When asked if anything the defendant did to her hurt her, she said, "No, sir."

The testimony of Brenda Phelps, the other little girl, adds nothing to that of the prosecutrix. Ronnie, the little boy, did not testify.

Barbara's father called the defendant by telephone and told him of her condition. The defendant denied that he was responsible for her condition and said that "he was coming on out and straighten it out." The defendant failed to keep this appointment, but this may have been due to the fact that in the telephone conversation the father, as he admitted, had made "some threats" against the defendant.

Code, § 18-54, provides in part: "If any person carnally know a female of sixteen years of age or more against her will, by force, or carnally know a female child under that age * * *, he shall, in the discretion of the court or jury be punished with death, or confinement in the penitentiary for life, or for any term not less than five years. * * *"

The words "carnally know" or "carnal knowledge" as used in this and similar statutes mean sexual intercourse. *King*

v. *Commonwealth,* 165 Va. 843, 846, 183 S. E. 187, 189; *People* v. *Burke,* 400 Ill. 240, 79 N. E. (2d) 488, 489; Webster's International Dictionary, Unabridged.

Consequently, it is universally held that under an indictment charging statutory rape of a child, as well as one charging the common-law offense of rape of an adult woman, the prosecution must prove that there has been an actual penetration to some extent of the male sexual organ into the female sexual organ. *Bailey v. Commonwealth,* 82 Va. 107, 113, 3 Am. St. Rep. 87; *Wharton's Criminal Law,* 12th Ed., Vol. 1, § 697, p. 935; *Id.,* § 698, pp. 936, 937; *Id.,* § 752, p. 1028; 44 Am. Jur., Rape, § 3, pp. 902, 903; 52 C. J., Rape, § 24, p. 1014; *Id.,* § 124, pp. 1090-1; *Id.,* § 127, pp. 1093-4.

This essential element of the offense must be proved beyond a reasonable doubt. Wharton's Criminal Law, 12th Ed., Vol. 1, § 697, p. 935; *Id.,* § 698, pp. 936, 937; 52 C. J., Rape, § 124, pp. 1090-1; *Id.,* § 127, pp. 1093-4.

It is true that the necessary element of sexual intercourse may be proven by circumstantial as well as by direct evidence (44 Am. Jur., Rape, § 100, p. 965; 52 C. J., Rape, § 84, p. 1058), but the proof must go beyond the mere showing of injury to the genital organs of the female and an opporunity on the part of the accused to have committed the offense.

In the case before us there is no proof that the injury to the child's genital organs was caused by a penetration of the defendant's sexual organ. The family physician frankly said that he did not know the cause of her injury. There is no evidence that the defendant at any time exposed his person, that he had, or even attempted to have, sexual intercourse with this child. The evidence is that her underclothing was not removed or disarranged. The absence of semen in the child's genital organs or of stains therefrom on her clothing, while not conclusive of the fact, is a strong circumstance indicating that there was no attempted sexual intercourse.

The little girl's only description of the particular act of the defendant was that "he done it to me," or "he done that to me." As shocking as her evidence is, it does not, in our opinion, prove beyond a reasonable doubt that the defendant "carnally" knew or had sexual intercourse with her. At most, it shows that he was guilty of molesting this child and tampering with her, sexual organs in some perverted but undisclosed manner. This

was not the offense with which he was charged or of which he was convicted.

It is not sufficient that facts and circumstances proven be consistent with defendant's guilt. To sustain a conviction they must be inconsistent with every reasonable hypothesis of his innocence. *Spratley* v. *Commonwealth,* 154 Va. 854, 861, 152 S. E. 362.

The judgment is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*