## Richmond

KIRBY STRAWDERMAN v. COMMONWEALTH OF VIRGINIA.

May 4, 1959.

Record No. 4928.

Present, All the Justices.

The opinion states the case.

*Donald D. Litten* (*George D. Conrad,* on brief), for the plaintiff in error.

*John W. Knowles, Assistant Attorney General (Albertis S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

Strawderman was convicted of the rape of Mary Elizabeth Miller, a female child under the age of sixteen years. Code, § 18-54. The jury fixed his punishment at forty years in the penitentiary. A motion to set aside the verdict was overruled, judgment entered, and the accused sentenced in conformity with the verdict. We granted him a writ of error.

The narrative statement of the testimony of the witnesses for the Commonwealth (no evidence being introduced on behalf of the accused) discloses that on Christmas Day, 1957, Strawderman, a nephew of Clifton Miller, visited the Miller home, arriving there about twelve o'clock noon; he asked permission of the parents to take Mary Elizabeth, the five-year-old daughter "to get some candy" as he had done on previous occasions, and when permission was granted he took the child with him; they drove to Dove's store in Rockingham county, and finding it closed, drove to Benny Carr's store where he purchased two or three bottles of Coca-Cola and a candy bar. According to Deputy Sheriff Spitzer, Strawderman stated that Mary Elizabeth did not get out of the car, was never out of his sight during the trip, and they never left State Highway No. 259. Returning to the Miller residence at approximately 1:30 p.m., Strawderman let the child out of his car but did not go in with her.

When Strawderman and Mary Elizabeth left the home Clifton Miller, father of the child, went to sleep and was awakened about 1:30 p.m., by the entrance of Mary Elizabeth into his room. She stood inside the door for a period of time which Miller estimated to be between 15 and 30 minutes, and did not say anything. When Mrs. Miller came in she examined the child and found some blood on her panties and legs.

Over the objection of the accused Mrs. Miller testified that the child stated to her that "Kirby [Strawderman] hurt her." On cross-examination Mrs. Miller said "it was only after she interrogated Mary as to whether Kirby had harmed her that the child made an affirmative answer." The father also was permitted to testify that the child told her mother in his presence that "Kirby hurt her." The jury was later instructed to disregard both statements.

The family having no means of transportation immediately available the child was not subjected to a physical examination by a medical doctor until the next day when she was taken to the office of Dr. Charles W. Hertzler in Bergton. Dr. Hertzler's examination of the child's genitals revealed a somewhat bloody "spread apart" vagina within which the hymen and surrounding tissues were torn. He testified that in his professional opinion the injury was caused by a male penis, adding that any other possibility was so remote that "he did not give it a second consideration", there being no visible bruises, scratches or cuts in or about the area.

Over the objection of the accused, Dr. Hertzler testified that he knew the Millers and that the father was a day laborer who always paid his bills, and that the mother was a "high moron".

Strawderman's white shorts, grey shirt, and the handkerchief (found in his car), together with the panties worn by Mary Elizabeth were forwarded to the Federal Bureau of Investigation, and counsel for Strawderman and the Commonwealth's Attorney entered into a stipulation that the laboratory report disclosed: The presence of two small stains of human blood on the handkerchief, and the presence of stains of human blood in the crotch area of the child's panties; that there were no stains of blood on the shirt or white shorts; that the blood was not susceptible of grouping; the presence of a seminal stain containing spermatozoa on the fly of the man's white shorts; an absence of semen on said pair of child's panties, on said man's grey shirt, and on said white handkerchief; that if an expert from the FBI laboratory were present he would testify that he was unable to state the length of time said seminal fluid found on said white shorts had been present.

There are four questions involved on this appeal. The first is: Did the court err in permitting Dr. Hertzler to testify that the father of the child was a day laborer and always paid his bills, and that the mother was a "high moron"? The Attorney General says in his brief, "The Commonwealth cannot argue seriously that the testimony objected to was material to the issue, but it does state emphatically that no injury to Strawderman could have resulted from its admission."

In view of the ultimate disposal of the case, the alleged error, whether harmless or not, will not likely recur.

The same applies to the second question: Did the court err in permitting Mr. and Mrs. Miller to testify as to what Mary Elizabeth

stated, which testimony the court ultimately instructed the jury to disregard.

The third question is: "Did the court err in granting Instruction No. 5?" This instruction, offered by the Commonwealth, dealt with the burden of proof, and it is argued by the accused that the concluding paragraph which read, "If, on the other hand, after an impartial and reasonable consideration of all the evidence in the case, you have an abiding conviction of the truth of the charge, you are then satisfied beyond all reasonable doubt," should have read, "If * * * you have an abiding conviction *to a moral certainty of the guilt of the accused*, you are then satisfied beyond all reasonable doubt."

Suffice it to say, as conceded by the accused, the instruction as given has been approved by this court. *Anthony* v. *Commonwealth*, 142 Va. 577, 579 (Headnote 13), 128 S. E. 633. Hence, it was not error to give the instruction. It should be remembered, however, that on numerous occasions we have stated that instructions attempting to define reasonable doubt should be discouraged as it is highly probable that any definition devised would be less illuminating than the expression itself. *McCoy* v. *Commonwealth*, 133 Va. 731, 112 S. E. 704; *Smith* v. *Commonwealth*, 155 Va. 1111, 156 S. E. 577.

The fourth and last question presented is: Was the evidence sufficient to support the verdict that the accused was guilty of rape?

It must be conceded that, absent the testimony of Dr. Hertzler that the injury to the child was caused by a male penis, the evidence is insufficient to convict the accused of rape. *McCall* v. *Commonwealth*, 192 Va. 422, 65 S. E. 2d 540.

Code of Virginia, § 18-54, provides in part:

"If any person carnally know a female of sixteen years of age or more against her will, by force, or carnally know a female child under that age * * *, he shall, in the discretion of the court or jury be punished with death, or confinement in the penitentiary for life, or for any term not less than five years. * * *".

The words "carnally know" as here used, mean sexual intercourse. *King* v. *Commonwealth*, 165 Va. 843, 846, 183 S. E. 187, 189. Consequently, it is universally held that under an indictment charging statutory rape of a child under sixteen years of age, as well as one charging the common law rape of an adult woman, the prosecution must prove that there has been an actual penetration to some extent of the male sexual organ into the female sexual organ. *Bailey* v. *Common-*

*wealth*, 82 Va. 107, 113, 3 Am. St. Rep. 87; Wharton's Criminal Law, 12th Ed., Vol. 1, § 697, p. 935; *McCall* v. *Commonwealth, supra*, 192 Va., at p. 426, 65 S. E. 2d, at p. 542. This essential element must be proved beyond a reasonable doubt. Wharton's Criminal Law, *supra*, 12th Ed., Vol. 1, § 697, p. 935; *Id.*, § 698, pp. 936, 937.

While the necessary element of sexual intercourse may be proved by circumstantial evidence (44 Am. Jur., Rape, § 100, p. 965) the proof must go beyond the mere showing of injury to the genital organs of the female and an opportunity on the part of the accused to have committed the offense.

Although Dr. Hertzler was introduced as an expert witness, his statement in this instance that the injury to the child was caused by a male penis is not sufficient to prove the act of sexual intercourse beyond a reasonable doubt. In the case of *McCall* v. *Commonwealth, supra*, 192 Va., at p. 426, 65 S. E. 2d, at p. 542, where similar injuries were inflicted upon a nine-year-old female, the doctor frankly said he could not state the cause of the injuries.

The competency of expert testimony depends upon the question as to whether or not any peculiar knowledge, science, skill, or art, not possessed by ordinary persons, is necessary to the determination of the matter at issue. In other words, expert testimony is not admissible as to matters within the experience or knowledge of persons of ordinary information as to which the jurors are competent to draw their own inferences from the evidence before them without extraneous aid other than the instructions of the court upon the questions of law involved. *Southern R. Co.* v. *Mauzy*, 98 Va. 692, 694, 37 S. E. 285; *Newton* v. *City of Richmond*, 198 Va. 869, 875, 96 S. E. 2d 775, 780; *Ramsey* v. *Commonwealth*, 200 Va. 245, 249, 250, 251, 105 S. E. 2d 155, 158, 159; 20 Am. Jur., Evidence, § 781, p. 651.

In 20 Am. Jur., Evidence, § 782, pp. 653, 654, the following is said:

"In many cases it is asserted as a broad general rule, often assumed to be an inflexible rule of law, that while an expert may be permitted to express his opinion, or even his belief, he cannot give his opinion upon the precise or ultimate fact in issue before the jury, which must be determined by them. In other words, while a jury is entitled to the aid of experts in determining the existence or non-existence of facts not within common knowledge, an expert witness

must not take the place of the jury and declare his belief as to an ultimate fact."

Here the crucial issue which the jury had to decide was whether or not the accused had carnally known this female child, and it is a matter of common knowledge, notwithstanding the doctor's statement, that the injuries described could have been caused by means other than the one related. Dr. Hertzler's statement as to the cause of the injury to the child was, of necessity, pure speculation and guess. It is not sufficient that facts and circumstances proved be consistent with the guilt of the accused. To sustain a conviction they must be inconsistent with every reasonable hypothesis of his innocence. *Spratley* v. *Commonwealth*, 154 Va. 854, 861, 152 S. E. 362.

As shocking as the evidence is, it does not in our opinion prove beyond a reasonable doubt that the accused "carnally knew" or had sexual intercourse with this child. At most, it shows that he was guilty of molesting the child and tampering with her sexual organs in some perverted but undisclosed manner. This is not the offense of which he was convicted. *McCall* v. *Commonwealth, supra*, 192 Va., at pp. 426, 427, 65 S. E. 2d, at p. 542.

The judgment is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*