**William Douglas HUNT, Appellee,**

v.

**M.L. WOODSON, Sheriff, Pittsylvania County, Virginia and Attorney General of the State of Virginia, Appellants.**

**No. 85–6682.**

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1986.

Decided Sept. 11, 1986.

Robert Q. Harris, Asst. Atty. Gen. (William G. Broaddus, Atty. Gen., Richmond, Va., on brief), for appellants.

Louis P. McFadden, Jr. (Meade, Tate & Daniel, P.C., Danville, Va., on brief), for appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

DONALD RUSSELL, Circuit Judge:

The Sheriff of Pittsylvania County, Virginia, M.L. Woodson, and the Attorney General of the State of Virginia, William G. Broaddus, appeal from the grant of a writ of habeas corpus requiring the release of William Douglas Hunt from their custody. The State of Virginia tried Hunt before a jury for burglary, rape and aggravated sexual battery on July 22, 1982. The jury found Hunt guilty of rape, and the trial judge sentenced him to fifteen years of imprisonment. Hunt then appealed to the Virginia Supreme Court.

Before Hunt's appeal, a typist, who was not present at trial, prepared the trial transcript by transcribing the proceedings from tape recordings of the trial. The typist's transcript, however, reported that the victim testified that, "He jumped on top of me and stuck his fingers into my body." After Hunt brought his appeal, the Commonwealth's Attorney sought leave from the Virginia Supreme Court, under Virginia Code § 8.01–428(B), to seek a correction of the transcript from the trial judge based on the Commonwealth Attorney's recollection that the victim testified that, "He jumped on top of me and stuck his penis into my body." This correction was crucial to the Commonwealth's case, because this testimony of the victim's was the only evidence before the jury of actual penetration, and, as decisions of both the Virginia Supreme Court and this court have made clear, under Virginia law, penetration is an essential element of the crime of rape. *Strawderman v. Commonwealth*, 200 Va. 855, 108 S.E.2d 376 (1959); *Coles v. Peyton*, 389 F.2d 224, 226–27 (4th Cir.), *cert. denied*, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968).

The Virginia Supreme Court granted leave for the trial court to consider the Commonwealth's motion for correction, but after listening to the tape recording, which was distorted, the trial judge could not accurately determine the victim's testimony. The trial judge sent the tape to an FBI lab for enhancement, but the FBI sent it back saying that enhancement had been impossible. The trial judge then stated that although he, like the Commonwealth's Attorney, remembered that the victim testified to penetration, he needed to rely on the tape for any degree of certainty, and he could not order a correction.

Faced with this setback, the Commonwealth's Attorney moved before the Virginia Supreme Court for a new trial. The Supreme Court, however, remanded the matter to the trial court for new consideration. Apparently feeling that the trial judge placed too much emphasis on the tape,[1] the Supreme Court directed the trial judge to consider his own recollection of the testimony as well as his statement in the record, only moments after the questioned testimony and following a defense objection, that, "She testified she's been

---

1. The trial judge's decision stated that:

    [T]he court declines to grant your motion in view of the fact that the magnetic tape of that portion of the testimony that you allege is in error in the trial transcript is distorted to the extent that the court cannot, with a reasonable degree of certainty, say what the witness' answer was.

    My recollection of the disputed testimony was the same as yours, but again I have to rely on the magnetic tape of the proceedings for any degree of certainty and I cannot say that [the defense attorney's] contention as to the witness' testimony is not correct.

penetrated ... what else do you want her to testify to?"

Reconsidering its earlier decision in light of this new guidance and after a hearing with all parties represented by attorneys, the trial judge corrected the transcript. The Virginia Supreme Court then refused Hunt's petition for appeal on the ground that there had been no reversible error in his conviction. Hunt subsequently petitioned for a writ of habeas corpus in the District Court for the Western District of Virginia, and the district court granted the writ under 28 U.S.C. § 2254. Arguing that this was in error, the Sheriff of Pittsylvania County and the Attorney General of Virginia have brought this appeal.

■ At issue here is the question of whether the district court gave proper deference to the state court's finding of fact that the witness testified to penetration. There is no question that the trial judge made a finding of historical fact, *see Miller v. Fenton,* —— U.S. ——, —— – ——, 106 S.Ct. 445, 451–53, 88 L.Ed.2d 405 (1985), because he found that the witness testified to penetration. At the same time there can also be no question that the trial judge afforded the defendant procedural due process in making this decision, because he allowed both parties to file briefs arguing the merits of a correction and held a hearing with both parties represented by attorneys. *Cf. Chessman v. Teets,* 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957). In this situation, under 28 U.S.C. § 2254(d), a federal court must presume that a state court's findings of facts are correct unless

one of § 2254(d)'s eight exceptions applies. *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981). Here, the district court determined that subsection d's eighth exception, that the "factual determination [was] not fairly supported by the record," applied.[2] The district court then concluded that the trial judge had improperly corrected the transcript and that, as a result, insufficient evidence supported Hunt's conviction. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Consequently, the issue on appeal is whether the district court afforded the state court's finding that the witness testified to penetration proper respect under 28 U.S.C. § 2254(d).

■ In a recent line of cases beginning with *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) and continuing most recently with *Kuhlmann v. Wilson,* —— U.S. ——, —— – ——, 106 S.Ct. 2616, 2629–31, 91 L.Ed.2d 364 (1986), the Supreme Court has clarified the meaning of § 2254(d) and in the process has reversed seven grants of the writ of habeas corpus where federal courts failed to give proper deference to state court findings of fact. In the first case of *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the court made it clear that Congress added subsection d to § 2254 in 1966 to lessen the friction between state and federal courts. The court pointed out, moreover, that under subsection d federal courts must presume that state court findings are correct unless the federal court explicitly finds that one of subsection d's

**2.** 28 U.S.C. § 2254(d) provides in part that:
(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless ...

(8) ... that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record....

eight exceptions applies. *Id.* at 550, 101 S.Ct. at 770–71.

In its subsequent decision in *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), the court examined the specific exception, in subsection d(8), that the district court relied on in making its decision in this case. In *Marshall*, an Illinois trial judge allowed into evidence a defendant's guilty plea on another crime in an Ohio court. In a hearing, the Illinois trial judge decided that the Ohio guilty plea had been voluntary and knowing based on the records of the Ohio court. In making his decision, the Illinois judge apparently chose not to credit the defendant's testimony that he did not understand the charges against him in Ohio. Ruling that there was not fair support in the record for the trial judge's admission of the Ohio conviction, a federal appeals court granted a writ of habeas corpus.

Reversing the appeals court's grant, the Supreme Court stated that the failure of the trial judge to expressly state that he did not believe the defendant's testimony could not support issuance of the writ, because that ruling was implicit in the trial judge's decision. Similarly, the Supreme Court also ruled that a reweighing of the evidence by the federal court also could not support issuance of the writ, because state court findings of fact are entitled to a "high measure of deference" and to reject a state court's findings under § 2254(d)(8) a federal court "must conclude that the state court's findings lacked even 'fair support' in the record." *Id.* at 432, 103 S.Ct. at 850. Of course, the Ohio court's records and the judge's presumed disbelief of the defendant's testimony provided ample support for the state court's decision. The Supreme Court also pointed out, moreover, that because he can see a witness' demeanor, a trial judge is particularly qualified to make accurate judgments of credibility. *Id.* at 434, 103 S.Ct. at 850–51.

In a similar vein, in *Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983), the Supreme Court overturned an appellate court's grant of a writ of habeas corpus on the ground that a state trial judge erred in not providing for further competency proceedings before requiring a defendant to stand trial. The defendant had moved shortly before trial for a competency examination and presented an expert's testimony, based on a one-hour examination of the defendant, which indicated that the defendant suffered from paranoid delusions. Relying on his own extensive observations of the defendant before trial, the trial judge denied the motion based on his belief that the defendant was competent. The Fifth Circuit overturned the trial judge's decision, on the ground that the expert's testimony about incompetency was unimpeached, and specifically pointed to § 2254(d)(8) as supporting its decision, because it believed that there was not fair support in the record for the state court's finding of competency. Relying on the trial judge's opportunity to observe the defendant and his reliance on specific instances of the defendant's conduct as supporting his finding of competency, the Supreme Court reversed the Fifth Circuit on the ground that there certainly was "fair support" in the record for the trial judge's decision.

More recently, in *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), and *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), the Supreme Court reversed lower courts which had granted writs of habeas corpus in situations involving questions of juror partiality. In *Patton*, pre-trial publicity threatened the jurors' impartiality, but after extensive voir dire the trial judge allowed the jury to sit. In *Rushen*, a juror communicated to the judge during trial that she realized that the victim of a prior crime that had been identified in the evidence had been her childhood friend. The judge interviewed the witness ex parte and decided that she could remain impartial. After trial, the defense moved for a new trial, and the trial judge held a new hearing

in which he determined that the juror had remained impartial so that the defendant had suffered no prejudice from either the ex parte contact of the juror with the judge or from the juror's participation in the trial.

In reversing the lower federal courts that granted writs of habeas corpus in these cases, the Supreme Court ruled that the state court findings of impartiality were entitled to "special deference," *Patton* at 1038, 104 S.Ct. at 2892–93, and that federal courts should defer to such findings "in the absence of 'convincing evidence' to the contrary." *Rushen* at 120, 104 S.Ct. at 456. The Supreme Court pointed out in *Patton*, moreover, that the decision of juror partiality was largely one of judging the credibility of juror testimony so that the trial judge was uniquely qualified to decide that question. 467 U.S. at 1038, 104 S.Ct. at 2892–93.

Finally, in *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983), a defendant received a death sentence after a murder trial, and the record was unclear as to whether the trial judge considered the defendant's future dangerousness during sentencing. Considering future dangerousness would have been a mistake under Florida law, but the Florida Supreme Court decided that the trial judge had not considered future dangerousness in his decision and upheld the sentence. The Eleventh Circuit then reversed the sentence and held that the Florida Supreme Court's ruling that the trial judge had not considered future dangerousness was incorrect.

As one of three alternative rationales for its decision reversing the Eleventh Circuit, the Supreme Court discussed the presumption of correctness to which the Florida Supreme Court's finding that the trial

court did not consider dangerousness was entitled. *See Sumner v. Mata*, 449 US. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (holding that factual findings of a state appellate court are entitled to § 2254(d)'s presumption). Concluding that the Eleventh Circuit erred in not relying on the Florida Supreme Court's finding, the Supreme Court pointed out that "[a]t best, the record is ambiguous ... [and] [b]ecause both of [the possible] conclusions find fair support in the record, we believe the Court of Appeals erred in substituting its view of the facts for that of the Florida Supreme Court." 464 U.S. at 85, 104 S.Ct. at 382–83.

In the present case, as in *Wainwright*, the record at best is ambiguous. The typist thought the tape recording said fingers, and on first considering the motion for correction, the trial judge could not decide what the witness had said. On the other hand, the trial judge recalled from the trial that the witness had said "penis," and only minutes after the questioned testimony, he had sustained an objection by stating that the witness had already testified to penetration. Of course, in a rape case, the term penetration has a constricted meaning, because it is an actual element of the crime.[3]

The defendant argues that the trial judge's penetration statement could be relevant to the charge of sexual assault, but penetration is not an element of that crime. *See* Va. Code §§ 18.2–67.3–67.10(6). Furthermore, it is especially clear that the trial judge must have used the word "penetration" to mean an element of the crime of rape, because the trial judge is making that statement in the record as he cuts off a line of the prosecution's questions concerning the actual commission of the crime.

---

**3.** Black's Law Dictionary defines penetration as "[a] term used in criminal law, and denoting (in cases of alleged rape) the insertion of the male part into the female parts to however slight an extent; and by which insertion the offense is complete without proof of emission." Black's Law Dictionary 1021 (5th ed. 1979).

Similarly, the court in *Strawderman v. Commonwealth*, 200 Va. 855, 108 S.E.2d 376, 379 (1959), stated that "it is universally held that ... [in cases of rape] the prosecution must prove that there has been an actual penetration to some extent of the male sexual organ into the female sexual organ."

If the judge had meant penetration as including the defendant's fingers, he would have allowed that questioning to continue, because the prosecution would not yet have asked the questions which might prove its rape charge. Consequently, by using the term "penetration" and simultaneously cutting off questioning, the trial judge must have believed that the victim had testified that the defendant's penis had entered her body. Even the defense attorney's actions at trial, moreover, support the finding that the witness testified to penetration, because in making his motion for acquittal the defense attorney focused on the lack of evidence of force and did not argue that there was no evidence of penetration.

Finally, as the Supreme Court emphasized in its *Marshall, Maggio,* and *Patton* decisions, the trial judge here, although not deciding credibility, was uniquely capable of accurately correcting the transcript. This is because the trial judge was in the best position to judge the strength of his recollection and was also in the best position to determine if he was likely to have used the term "penetration" in a non-technical sense.

In sum, although the trial judge originally decided not to correct the transcript, his first opinion reveals a heavy reliance on the tape recording. When the Virginia Supreme Court directed him to reconsider his decision in light of the entire record, however, the trial judge quite rationally decided to correct the transcript. Because of the trial judge's recollection, his use of the term "penetration" in the record, and his unique ability to accurately correct the transcript, this decision definitely has "fair support" in the record. Consequently, under § 2254(d), the district court should have presumed that the trial judge's finding that the victim testified to actual penetration was correct and should not have granted the writ of habeas corpus. Accordingly, the judgment of the district court granting the writ of habeas corpus is

REVERSED.

GORDON, Senior District Judge, dissenting:

Respectfully, I dissent from the opinion of the majority. On the facts of this case, I do not think the authorities cited by the majority require reversal of the judgment of the district court.

I take no exception to the conclusion of the majority that the state court's findings of fact are entitled to a high measure of deference. However, by reason of the unusual procedure in which the record was changed, the presumption of correctness accorded the factual finding of the trial court was compromised in my view.

The crucial issue before the trial court on the very serious charge of rape was whether there was a sexual penetration of the victim. The record as transcribed did not support the prosecution's contention on this issue.

On the initial remand by the Virginia Supreme Court to the trial court to consider correcting the transcript, the trial court judge denied the prosecution's motion and stated that he could not find with "reasonable certainty" what the answer of the victim was, and further remarked that he could not say that defense counsel's contention was incorrect. Additionally, the Federal Bureau of Investigation, upon direction by the trial court, examined the tape and reported that an aural examination of the designated portion of specimen Q1 revealed the following: "He jumped on top of me and stuck his fingers inside of me." Accordingly, the prosecution's motion to correct the transcript to reflect sexual penetration was denied by the trial court.

The prosecution at this point did not appeal the transcript decision but instead petitioned the Virginia Supreme Court for a new trial. The Supreme Court, without notifying the parties or considering any briefs or materials not considered by the trial court, remanded the case to the trial court for reconsideration of the transcript issue.

The Supreme Court noted that there was "ample basis" for the transcript change. On remand, the trial court, faced with this very clear mandate of its Supreme Court, quite naturally changed the transcript in accordance with the prosecution's motion.

This procedure is what causes me concern. In my opinion, the trial court's independence—which the majority opinion correctly notes includes the advantages of first-hand observation and recollection—was compromised in this case by the Virginia Supreme Court's mandate. And while the majority opinion correctly notes that federal habeas courts generally should defer to the factual rulings of state appellate courts, none of the cases cited deal with a situation in which the state appellate court's fact-finding conflicts with that of its state trial court. In such a situation, presented here, the federalism concerns relied upon so heavily in *Wainwright* and *Sumner* are simply not dispositive.

When the motion to amend the transcript first came before him, the trial judge considered fully the available facts and explicitly denied the motion to amend. No additional facts were presented after the order remanding the case for further consideration by the trial judge.

Given the transcriber's understanding of the tape, the Federal Bureau of Investigation's report, and the obvious uncertainty of the trial judge, concerning a crucial element of the offense charged, I would affirm the decision of the district judge.