**Wilbert Lee EVANS,**
**Petitioner–Appellant,**

v.

**Charles THOMPSON, Superintendent,**
**Respondent–Appellee.**

No. 88–4007.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1989.

Decided Aug. 2, 1989.

Rehearing and Rehearing In Banc Denied
Aug. 28, 1989.

118

Thomas Francis Connell (Arthur F. Mathews, Thomas W. Jeffrey, Washington, D.C., Wilmer, Cutler & Pickering, Jonathan Shapiro, on brief) for petitioner-appellant.

Robert H. Anderson, III, Richmond, Va., (Mary Sue Terry, Atty. Gen. of Va., Stuart, Va., Donald R. Curry, Sr. Asst. Atty. Gen., on brief) for respondent-appellee.

Before HALL and WILKINSON, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

Petitioner was convicted of capital murder and sentenced to death. Following a confession of error by the prosecution, he was resentenced to death by a new jury. Petitioner contends that his resentencing was barred by the *Ex Post Facto* Clause, the Equal Protection Clause, and the Due Process Clause. He further argues that during resentencing he was denied his constitutional right to confront and cross-examine witnesses and that the trial judge improperly instructed the jury. Finally, he claims ineffective assistance of counsel

both on direct appeal and during his first trial.

The district court rejected petitioner's claims. We affirm.

## I.

On January 27, 1981, petitioner Wilbert Lee Evans shot and killed Deputy Sheriff William Truesdale while attempting to escape from state custody. Truesdale was escorting petitioner, at the time a North Carolina prisoner, to Alexandria, Virginia, where he was to testify as a witness for the Commonwealth of Virginia. Petitioner had pretended to be a willing witness for the Commonwealth for the sole purpose of escaping during his transportation from North Carolina to Virginia. He planned to kill anyone who attempted to prevent his escape and acted on this intent when he killed Truesdale.

In June 1981, petitioner was convicted of capital murder and sentenced to death in the Circuit Court of Alexandria, Virginia. The Supreme Court of Virginia affirmed his conviction and death sentence on December 4, 1981, 222 Va. 766, 284 S.E.2d 816. On March 22, 1982, the Supreme Court denied certiorari.

In April 1982, petitioner filed a petition for a writ of habeas corpus in Alexandria Circuit Court. He amended his petition in May 1982 and again in December 1982.

On April 12, 1983, the Commonwealth formally confessed error in petitioner's sentencing proceedings and acknowledged that his death sentence should be vacated because erroneous evidence of his prior convictions had been admitted at trial. The circuit court vacated petitioner's sentence and directed that a hearing be held to determine whether petitioner should be resentenced by a new jury or have his sentence reduced to a life term. Following a determination on October 12, 1983 that resentencing under the amended statute could proceed, the court impaneled a new jury which heard evidence of petitioner's history of violent criminal conduct. That jury recommended the death penalty based upon a finding of petitioner's "future dangerousness." On March 7, 1984, the trial court imposed the death penalty. The Virginia Supreme Court affirmed the sentence and the United States Supreme Court denied certiorari.

In May 1985, petitioner filed a third amended petition for a writ of habeas corpus in Alexandria Circuit Court. The circuit court dismissed his petition on May 19, 1986. The Virginia Supreme Court denied review as did the United States Supreme Court.

On October 5, 1987, petitioner filed for a writ of habeas corpus in the Eastern District of Virginia. In response to petitioner's request for discovery of the Commonwealth's files, the court conducted an *in camera* review of the files and, finding nothing relevant to petitioner's assertions, denied his request. On August 4, 1988, the court rejected Evans' petition.

Petitioner appeals.

## II.

Petitioner contends there are three bars to his resentencing: A) the *Ex Post Facto* Clause; B) the Equal Protection Clause; and C) the Due Process Clause. We address each argument in turn.

### A.

On March 28, 1983, Virginia enacted emergency legislation, amending its procedures for trial by jury in capital cases to permit capital resentencing by a newly impaneled jury where a prior death sentence was vacated due to sentencing errors. Va. Code Ann. § 19.2–264.3C. Prior to this amendment, if the Commonwealth failed to secure a valid death sentence due to errors in the sentencing process it was foreclosed from seeking capital resentencing and the defendant received an automatic sentence of life imprisonment. *Patterson v. Commonwealth*, 222 Va. 653, 283 S.E.2d 212 (1981). Petitioner contends that to resentence him to death pursuant to the March 1983 legislation, when both his offense and trial occurred before that date, retroactively deprives him of his right to have his death sentence converted to life imprison-

ment. We hold, however, that no violation of the *Ex Post Facto* Clause occurred.

■ The *Ex Post Facto* Clause exists to assure individuals fair notice of the nature and consequences of criminal behavior and to prevent the alteration of preexisting rules subsequent to the commission of an act. Two elements must exist for a law to fall within the *ex post facto* prohibition: 1) the law "must be retrospective, that is, it must apply to events occurring before its enactment," and 2) "it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnotes omitted). Central to the *ex post facto* inquiry is whether the law merely changes " 'modes of procedure which do not affect matters of substance,' " and hence is permissible; or whether it impacts on defendant's " 'substantial personal rights,' " and thus is prohibited. *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977), *quoting Beazell v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68, 70 L.Ed. 216 (1925). "[N]o *ex post facto* violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.' " *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 2452–53, 96 L.Ed.2d 351 (1987), *quoting Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884). *See also United States v. Juvenile Male,* 819 F.2d 468, 470–71 (4th Cir.1987); *United States v. Mest,* 789 F.2d 1069, 1071 (4th Cir.1986).

The 1983 amendment does no more than change the procedures surrounding the imposition of the death penalty. It provides only that if a capital sentence is set aside, then a resentencing before a new jury can be held. When the offense was committed, the "willful, deliberate and premeditated killing of a law-enforcement officer … for the purpose of interfering with the performance of his official duties" was an offense for which the death penalty could be imposed. *See* Va.Code Ann. §§ 18.2–31(f); 18.2–10(a). Fair warning of punishment was thus afforded petitioner. The change in § 19.2–264.3C was merely an "adjustment[ ] in the method of administering [petitioner's] punishment that [was] collateral to the penalty itself." *Evans v. Commonwealth,* 228 Va. 468, 323 S.E.2d 114, 119 (1984).

In a case analogous to the present one, *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), a capital sentencing statute in effect when Dobbert committed murder was later held to be invalid. Dobbert, who had been sentenced to death pursuant to a subsequent statute, under which the judge had overruled the jury's recommendation of life imprisonment, argued that application of the new sentencing law violated his substantial rights. The Court concluded that *ex post facto* concerns were satisfied because the applicable statute when Dobbert committed murder warned him of the penalty Florida prescribed for first-degree murder. *Id.* at 298, 97 S.Ct. at 2300. The test of whether a change in law ran afoul of the *Ex Post Facto* Clause was not whether it worked to the detriment of a particular defendant. Rather, it was whether the changes "made criminal a theretofore innocent act," or "aggravated a crime previously committed," or "provided greater punishment," or "changed the proof necessary to convict." *Id.* The Virginia amendment neither increased the punishment attached to petitioner's crime, nor altered the ingredients of the offense, nor changed the ultimate facts necessary to establish petitioner's guilt. It thus survives petitioner's *ex post facto* challenge.

Petitioner's reliance on *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), is misplaced. Unlike in *Kring,* the petitioner here has not been convicted of a lesser offense for which the death penalty was not authorized, nor has he been acquitted of any offense for which the death penalty was authorized. Moreover, unlike *Kring,* the petitioner was not deprived of a defense available to him when he committed murder. *Kring* simply provides that if at the time of the offense, a defendant is on notice he can never be subjected to a death sentence, imposition of a death sentence violates the *Ex Post Fac-*

*to* Clause. Here petitioner was on notice when he murdered Deputy Sheriff Truesdale that the imposition of death was a possible penalty.

■ Petitioner contends that the new Virginia law abrogated his right to be sentenced by the same jury which decided his guilt. He argues that a juror who sat through both phases of a capital trial might entertain doubts which, though not enough to defeat conviction, might convince him that the ultimate penalty should not be exacted. "Residual doubts" at the penalty stage of a capital trial, however, are constitutionally insignificant. *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 2327 n. 6, 101 L.Ed.2d 155 (1988). Moreover, it is possible that a juror less familiar with first-hand evidence of the crime and, having not just found petitioner guilty, may be less inclined to impose the maximum penalty.

The Virginia amendment represents a continuing effort by the Virginia Supreme Court, *Patterson v. Commonwealth*, 222 Va. 653, 283 S.E.2d 212 (1981), and the Virginia legislature to balance a defendant's right to fair sentencing with society's interest in not alleviating the consequences of criminal acts when a sentencing error occurs. *See Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978). It promotes the basic aspiration of criminal justice to achieve results that are error-free. The Virginia Supreme Court has recognized the ameliorative purposes of the enactment:

> the new law provides for impanelling a new jury, free of any taint arising from errors during the first trial, to redetermine the defendant's punishment. A defendant convicted of capital murder is entitled to a fair and impartial determination of his punishment: he will not be heard to complain that a change in the law which protects that right is not wholly beneficial to him.

*Evans*, 323 S.E.2d at 119.

The *Ex Post Facto* Clause does not confer upon this defendant an unalterable right to be sentenced by the jury which found his guilt or never to be resentenced in any fashion. To confer such a right would have serious implications for the workings of our federal system. That system presupposes that states will routinely undertake to improve their methods of jury selection, their rules of evidence, the availability of appeals and post-conviction proceedings, and other procedures of their criminal justice systems. To hold that every change with an arguable adverse impact upon the outcome of a criminal case has *ex post facto* implications would seriously inhibit this process of reform, because legislation generally has an effective date of enactment independent of the date of the commission of an act. The elusive nature of the *ex post facto* prohibition derives from the fact that law does and should evolve. The Supreme Court has long emphasized that "the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offence charged against him." *Thompson v. Utah*, 170 U.S. 343, 351, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). We reject petitioner's attempt to create such a right in this instance.

### B.

■ Petitioner also argues that the Equal Protection Clause bars his capital resentencing. He claims that he and the defendant in *Patterson v. Commonwealth*, 222 Va. 653, 283 S.E.2d 212 (1981), who received an automatic sentence of life imprisonment at his resentencing, were identically situated in all respects, except that Patterson's death sentence was vacated prior to enactment of the amendment. Treating him differently than Patterson, he contends, did not rationally further any legitimate state objective.

We find no merit to this contention. Because capital defendants are not a suspect class for equal protection purposes, *Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir.1987), legislative classifications must be presumed valid and sustained if they are "rationally related to a legitimate state interest." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S.

432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In making the rational basis inquiry, we must determine if classifying Patterson and petitioner differently has a " 'fair and substantial relation to the object of the [1983 amendment].' " *Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972), *quoting Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225 (1971).

The purpose of the 1983 amendment is straightforward: to establish new procedures for resentencing in capital cases where a prior death sentence is vacated. Like Florida in *Dobbert*, the Commonwealth "had to draw a line at some point," *Dobbert*, 432 U.S. at 301, 97 S.Ct. at 2302, and to apply the amendment only to those defendants whose sentences were vacated following the amendment's enactment is entirely rational. As the district court recognized, it ties the amendment's application to the event which necessitates resentencing: vacating the original sentence. Accordingly, classifying petitioner and Patterson differently is permissible.

### C.

Petitioner further argues that prosecutorial misconduct bars his resentencing. He contends that state prosecutors violated his due process rights when they knowingly proffered false conviction records at his original sentencing hearing and then deliberately delayed confessing error until after the 1983 amendment was enacted.

■ We disagree. Pursuant to 28 U.S.C. § 2254(d), a federal habeas court is required "to accord a presumption of correctness to state court findings of fact." *Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982); *Hunt v. Woodson*, 800 F.2d 416, 419 (4th Cir.1986). In particular, a state court finding that the government acted in good faith where defendant alleges he has been the victim of intentional or purposeful government misconduct, is entitled to a presumption of correctness. *Sanderson v. Rice*, 777 F.2d 902, 909 (4th Cir.1985); *Rose v. Duckworth*, 769 F.2d 402, 405 (7th Cir.1985). "This deference requires that a federal ha-

beas court more than simply disagree with the state court before rejecting its factual determinations." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). "[I]t must conclude that the state court's findings lacked even 'fair support' in the record." *Id.*

■ Here the record supports the state court's findings, upheld by the district court, that the Commonwealth acted in good faith. *See Evans*, 323 S.E.2d at 119–121. At an evidentiary hearing, conducted by the trial court in response to petitioner's claims of prosecutorial misconduct, the prosecuting attorney testified he never intended to deceive the trial judge, the jury, or the defense concerning the true status of petitioner's record. He also testified that defense counsel had investigated petitioner's prior record, had informed him that they were familiar with petitioner's record, and had been given pretrial access to discovery materials which showed the conviction records were questionable. Moreover, during the sentencing proceeding, the prosecutor advised defense counsel of the discrepancies regarding the convictions and testified that he assumed defense counsel would explain the error to the jury during closing argument. In his own argument to the jury, the prosecutor alluded only to those offenses for which petitioner had actually been convicted.

Likewise, the assistant attorney general who handled petitioner's first appeal and the habeas corpus proceeding testified that he did not purposefully delay confessing error until passage of the amendatory legislation. He noted that he "wanted to be one hundred percent sure" before confessing error in a capital case, already affirmed on direct appeal. Nothing in § 2254(d) "gives federal habeas courts ... license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall*, 459 U.S. at 434, 103 S.Ct. at 850. Additionally, the trial court, the Virginia Supreme Court, and the federal district court conducted an *in camera* review of the original files in the governor's office and the attorney general's office relating to the draft-

ing, introduction, consideration, and approval of the new legislation and found nothing to support petitioner's claim.

To the extent that the prosecutor was guilty of unintentional errors of judgment in his handling of the case, these errors were remedied when petitioner received a new sentencing proceeding free of false or misleading evidence. A defendant must show "demonstrable prejudice," that cannot be cured by a "traditional" remedy, such as resentencing, to obtain the "drastic" remedy that Evans seeks. *United States v. Morrison*, 449 U.S. 361, 365 & n. 2, 101 S.Ct. 665, 668 & n. 2, 66 L.Ed.2d 564. Petitioner's argument that he was demonstrably prejudiced by resentencing because he was thereby deprived of an automatic sentence of life imprisonment is misplaced. Petitioner's conviction carried the same possible penalty it did when he committed it.[1]

### III.

Petitioner contends that two errors occurred during his resentencing: 1) he was denied his constitutional right to confront and cross-examine adverse witnesses because the prosecution read into the record the 1981 trial transcript testimony of these witnesses, and 2) he was denied his due process rights because the trial judge improperly instructed the jury that a sentence of life imprisonment could be imposed only by a unanimous verdict. We find neither contention persuasive.

■ Petitioner's cross-examination claim must fail because such a claim implies that the trial court denied a request to confront and cross-examine adverse witnesses. Petitioner relies upon *Tichnell v. State*, 290 Md. 43, 427 A.2d 991, 993 (1981), which involved a transcript used despite defendant's "vociferous objection." Here the district court expressly found that "[t]he record clearly shows that Evans' counsel agreed to the use of a transcript at resentencing." The trial record amply supports this finding. Moreover, Evans may well have benefited by agreeing to have the trial transcript read to the jurors, as opposed to live testimony.[2]

■ Petitioner's contention that the trial judge improperly failed to instruct the jury that under Virginia law a split decision by a capital sentencing jury automatically becomes life is also without merit. In response to the jury's inquiry of whether a life sentence must be unanimous, the trial judge instructed the jury that its "verdict must be unanimous as to either life imprisonment or death." Such instructions accurately state Virginia law, which requires that the verdict in all criminal prosecutions be unanimous. *See* Va.Rule 3A:17(a). No obligation exists for the trial judge to inform the jury of the ultimate result should they fail to reach a verdict. *See Barfield v. Harris*, 540 F.Supp. 451, 472 (E.D.N.C.

---

1. Petitioner also argues that his resentencing violates the Double Jeopardy Clause. We disagree. The clause generally does not prohibit resentencing where a verdict has been set aside for trial error. *Lockhart v. Nelson*, —— U.S. ——, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265 (1988). The clause would operate here only if the error was the product of deliberate prosecutorial misconduct. *Oregon v. Kennedy*, 456 U.S. 667, 674–79, 102 S.Ct. 2083, 2088–91, 72 L.Ed.2d 416 (1982).

   The state habeas courts found the Commonwealth acted in good faith. Because such findings are subject to the mandate of § 2254, *see Rose*, 769 F.2d at 405, and no evidence contradicts the findings of these courts, the Double Jeopardy Clause is inapplicable.

2. Petitioner failed to raise his confrontation claim both at trial and on direct appeal. When he raised his claim in the state habeas court, the Commonwealth asserted that the claim had been defaulted. The state habeas court dismissed the claim "for the reasons stated in the [Commonwealth's] answer." The Virginia Supreme Court affirmed this dismissal, finding "no reversible error in the judgment complained of."

   Pursuant to *Harris v. Reed*, —— U.S. ——, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), "a procedural default does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id., quoting Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985). While we think the Virginia courts did intend to hold petitioner's claim procedurally barred, we address the merits of the claim to remove any question with regard to it.

1982), *aff'd*, 719 F.2d 58 (4th Cir.1983). In addition, the trial judge's response to the jury's inquiry left no doubt that a non-unanimous verdict would not result in death.

No "substantial probability" exists that the trial court's instruction misled the re-sentencing jury as to unanimity. *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988). The jury was simply told that any verdict must be reached unanimously. During *voir dire*, moreover, each juror was informed that even as a minority of one, he or she could hold out if convinced that a life sentence was appropriate. At closing, defense counsel reminded the jury that their sentence must be unanimous. Finally, when polled individually, each juror affirmed the verdict as his or her own.

### IV.

Petitioner raises two final claims: 1) that he was denied his right to effective assistance of counsel on direct appeal from his 1981 conviction because his counsel failed to discover and inform the court that his death sentence was based on false evidence, and 2) that he was denied his right to effective assistance of counsel during his 1981 trial when his counsel failed to object to the prosecution's assertion that he was a multiple murderer.[3] We reject both claims.

■ Petitioner's argument of ineffective assistance on direct appeal fails to meet the criteria of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, petitioner must show that counsel's performance fell outside the "wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. at 2065, and "that the deficient performance prejudiced the defense" to an extent "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id.* at 687, 104 S.Ct. at 2064. *See also United States v. Alexander*, 789 F.2d 1046, 1051 (4th Cir.1986); *Roach v. Martin*, 757 F.2d 1463, 1476–77 (4th Cir.1985). This standard applies to claims against both trial and appellate counsel. *Smith v. Murray*, 477 U.S. 527, 535–36, 106 S.Ct. 2661, 2666–67, 91 L.Ed.2d 434 (1986); *Griffin v. Aiken*, 775 F.2d 1226, 1235–36 (4th Cir. 1985).

Petitioner has failed to overcome the strong presumption that counsel's performance was reasonable. Prior to trial, counsel traveled to North Carolina to investigate petitioner's record of prior convictions and found them in disarray. Accordingly, he objected to some of the records when they were introduced at trial. Following the trial, counsel determined what he believed to be petitioner's most viable arguments and raised them on appeal. Doing so was sound trial strategy. *See Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). The errors in the certified conviction records introduced at trial could only be shown by going outside the trial record. Counsel, however, was under no duty to go beyond the trial record because nothing beyond that record would have been cognizable on appeal. *See Guthrie v. Commonwealth*, 212 Va. 602, 186 S.E.2d 68, 70 (1972). *See also O'Dell v. Commonwealth*, 234 Va. 672, 364 S.E.2d 491, 505 n. 8 (1988).

Additionally, petitioner cannot demonstrate that he has been prejudiced by counsel's alleged error. Vacating his original sentence and affording him resentencing free of error mooted any claims of prejudice. *Hyman v. Aiken*, 777 F.2d 938, 941 (4th Cir.1985), *vacated on other grounds* 478 U.S. 1016, 106 S.Ct. 3327, 92 L.Ed.2d 734 (1986). Petitioner cannot show a "reasonable probability" that the result of the proceeding would have been different but for his counsel's alleged errors. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

---

**3.** Petitioner also argues that the guilt phase of his trial was flawed because the trial court permitted the Commonwealth to change the crime charged from a non-capital to capital offense. We disagree. Virginia law permits amendments at any time prior to the verdict, Va.Code Ann.

§ 19.2–231, so long as the amendment does not change the "nature or character of the offense charged." Here the language of the indictment clearly charged a capital offense. The amendment merely corrected an error in citation of the capital murder statute.

Likewise, petitioner's claim that his 1981 trial counsel improperly failed to object to the prosecution's assertion he was a multiple murderer fails *Strickland* scrutiny. Pursuant to § 2254(d), *see Hoots v. Allsbrook*, 785 F.2d 1214, 1219 n. 6 (4th Cir.1986), we must accept the state habeas court's express factual finding that petitioner's counsel chose not to object to the prosecutor's argument for tactical reasons. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Jeffers v. Leeke*, 835 F.2d 522, 525 (4th Cir.1987). Defense counsel testified that he chose not to object to the prosecutor's argument because he felt an objection would only have emphasized the matter before the jury. As the district court also noted, "[r]ather than draw further attention to the evidence, defense counsel instead chose to attack the credibility of the relevant witnesses during argument." This is a judgment trial attorneys make routinely. It does not give rise to a claim under *Strickland.*

For all these reasons, the judgment of the district court is

AFFIRMED.