**Lem Davis TUGGLE, Petitioner,**

v.

**C.E. THOMPSON, Respondent.**

**Civ. A. No. 92–0737–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

June 8, 1994.

Helen L. Konrad, Timothy Kaine, Mezzullo & McCandlish, Richmond, VA, for petitioner.

Robert Bartos Condon, Office of the Atty. Gen., Richmond, VA, for respondent.

### Memorandum Opinion

TURK, District Judge.

Petitioner Lem Davis Tuggle, through counsel, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Tuggle claims that the following constitutional errors tainted his conviction and sentence:

1) The trial court failed to appoint an independent psychiatrist and an expert pathologist to assist in the preparation of Tuggle's defense;

2) The conduct of the trial court and the prosecution worked to deny Tuggle of his right to a trial by an impartial jury;

3) There was insufficient evidence to convict Tuggle of murder during the commission of rape;

4) The trial court erred in allowing Dr. Arthur Centor to testify that Tuggle posed a "future danger" to society because such testimony was based on discussions with Tuggle outside the presence of counsel without a waiver of his Fifth and Sixth Amendment rights;

5) The prosecutor argued that Tuggle should be put to death because he would otherwise be released on parole;

6) The "vileness" instruction given to the jury was unconstitutionally vague;

7) The trial court prevented Tuggle's appointed trial counsel from rendering effective assistance of counsel to Tuggle at trial because it prohibited them from presenting the kind of defense to which their client was constitutionally entitled;

8) Tuggle's conviction and sentence were so infected with error as to deprive him of the protections provided by the Eighth Amendment;

9) The Virginia Supreme Court upheld Tuggle's death sentence after striking the "future dangerousness" aggravating circumstance;

10) The Virginia death penalty statute is unconstitutional because of the vagueness of the "vileness" aggravating circumstance.

Petitioner requests that the court set aside his conviction and sentence of death.

Respondents, through counsel, filed a motion to dismiss the petition on November 12, 1992. Petitioner, through counsel, responded to the motion on March 12, 1993. Petitioner also filed a separate motion requesting that an evidentiary hearing be held on the motion. A hearing was held on March 15, 1994. After hearing and considering the arguments of counsel on that date, the court finds this case to be ripe for disposition.

**1.** The Commonwealth also charged petitioner with forcible sodomy and use of a pistol in the commission of murder.

**2.** Petitioner was also convicted of the non-capital offenses.

*Procedural History*

Petitioner was charged with capital murder in the Circuit Court of Smyth County in 1983. The Commonwealth alleged that he committed the murder of Jessie Geneva Havens during the commission of rape.[1] Petitioner was represented at trial by two court-appointed counsel: Joseph S. Tate and John H. Tate, Jr. On January 18, 1984, petitioner was convicted of capital murder.[2] On January 19, 1984, the sentencing jury concluded that the crime was vile and that Tuggle posed a future danger. Based on these statutory "aggravating circumstances," the jury recommended a sentence of death. The trial court imposed that sentence on March 22, 1984.

Tuggle appealed his conviction and sentence to the Virginia Supreme Court. On November 30, 1984, that Court, after conducting mandatory sentence review, affirmed the lower court judgment based on the presence of both statutory aggravating circumstances. *Tuggle v. Commonwealth,* 228 Va. 493, 323 S.E.2d 539 (1984).

Petitioner filed a petition for writ of certiorari to the United States Supreme Court. The Supreme Court vacated the sentence and remanded the case to the Virginia Supreme Court in light of its holding in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).[3] *Tuggle v. Virginia,* 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985).

On remand, the Virginia Supreme Court found that the sentencing was unconstitutional because the prosecution psychiatrist had testified as to petitioner's "future dangerousness," despite the fact that petitioner had been denied the appointment of an independent psychiatrist to help him prepare a defense. *Tuggle v. Commonwealth,* 230 Va. 99, 107–08, 334 S.E.2d 838, 843–44 (1985). Moreover, the Virginia Attorney General conceded that petitioner was entitled to a

**3.** *Ake* holds that when the prosecution in a capital sentencing proceeding presents psychiatric evidence of an indigent defendant's future dangerousness, due process requires that the defendant have access to psychiatric testimony, a psychiatric examination, and assistance in preparing for the sentencing stage. 470 U.S. at 83–84, 105 S.Ct. at 1096–97.

new sentencing on the basis of *Ake.*[4] Rather than granting a new sentencing, the Virginia Supreme Court struck down the "future danger" aggravating circumstance, but held that the jury's finding of "vileness" independently supported the death sentence. 230 Va. at 111, 334 S.E.2d at 846. The Court did not discuss the effect that the improper psychiatric testimony had on petitioner's sentencing jury, nor did it reconduct a sentence review after the "future dangerousness" aggravator was eliminated.[5] Tuggle petitioned for a rehearing, but his petition was denied on October 11, 1985.[6]

In October 1986, petitioner filed a petition for writ of habeas corpus in the Circuit Court of Smyth County. The court dismissed the petition, without an evidentiary hearing, on March 18, 1991. Petitioner filed a Petition for Appeal in the Virginia Supreme Court which was dismissed by an unpublished order on November 14, 1991. Petitioner then filed a petition for writ of certiorari with the United States Supreme Court which was denied on April 20, 1992. *Tuggle v. Bair*, — U.S. —, 112 S.Ct. 1681, 118 L.Ed.2d 397 (1992). The instant petition is the first Tuggle has filed in federal court.

### Factual Background

The offense for which petitioner was convicted occurred on May 29, 1983. The victim was Jessie Geneva Havens. The facts from the original trial court proceeding indicated that petitioner had met Havens at a dance on May 28, 1983 and had offered to give Havens a ride home, which she accepted. When Havens did not return home, the police were notified that she was missing.

The next day, Tuggle volunteered to police that he was connected with a missing persons report relating to Jessie Havens. Tuggle told police that he did not know what had happened to Havens, but he did know where her body was located. The police then went to the place where Tuggle had said Havens body would be and found her partially-clothed body. Petitioner was subsequently charged with murder during the commission of rape, sodomy and use of a firearm to commit murder.

Several months prior to trial, petitioner's trial counsel filed a motion for the appointment of various experts, including a pathologist, a forensic serologist, a ballistics examiner and an odontologist, to examine the scientific evidence on behalf of the defense. The trial court denied petitioner's motion.

Petitioner's trial counsel later filed a motion for the appointment of a mental health professional to examine petitioner's sanity at the time of the offense and his competence to stand trial. The court granted this motion and ordered state mental health professionals to examine petitioner with respect to these two issues. Based on the court's order, the state doctors obtained a waiver from petitioner. The doctors, including Dr. Arthur Centor, interviewed petitioner and informed the court that, in their opinion, petitioner was sane and could assist in his own defense. The state doctors also informed the court that they had formed an opinion as to Tuggle's "future dangerousness."

Fourteen days before trial, Tuggle's counsel was informed of Centor's opinion. They immediately requested the appointment of an independent psychiatrist to assist Tuggle in his defense to the capital murder charge. The trial court denied the request. Trial counsel then offered to pay for such an investigation from their own funds and requested that the court transfer Tuggle to a county jail in the community where their expert was located. The trial court again denied the motion.

Several weeks before trial, Tuggle's trial counsel moved for a change of venue due to the extensive publicity that the case had

---

**4.** This is apparently the only instance in Virginia legal history where the Office of the Attorney General has admitted constitutional error in a reported capital case.

**5.** Respondents contend that the independent review conducted on petitioner's direct appeal was sufficient, because the court expressly affirmed

the jury's finding of "vileness." 228 Va. at 517, 323 S.E.2d at 554.

**6.** Petitioner filed another petition for writ of certiorari attacking this ruling, but the petition was denied. *Tuggle v. Virginia*, 478 U.S. 1010, 106 S.Ct. 3309, 92 L.Ed.2d 722 (1986).

received in the months leading up to trial. Some of the publicity reported that petitioner had previously been convicted of second-degree murder and at least one article mistakenly indicated that the prior conviction also included rape. Another article repeated this information and also indicated that Tuggle was a suspect in the rape of a 15 year-old girl for which he was never charged. The trial court denied the motion, but conditioned the denial on the ability to select an unbiased jury during voir dire.

The jury panel in petitioner's case was chosen from a venire that had previously been called for duty in other cases during the same month. On the night before the trial, John Tate learned from a call from a potential juror that some members of the panel from which the Tuggle jury was selected had been contacted by a member of the Sheriff's Department and by Terry Hawthorne, a reporter for the *Smyth County News,* apparently concerning their performance as jurors in a murder trial that had occurred a few days earlier. In that trial, the defendant had been convicted of a lesser crime than the first-degree murder charge and the prosecutor had expressed his dissatisfaction with the jury verdict to a local reporter. Tate refused to discuss the matter with the juror.

The next day, however, Tuggle's counsel revealed to the trial court that some members of the jury venire had been contacted concerning their service on the previous jury. Counsel asked for the opportunity to voir dire the jury about such contacts or to summon the reporter who had contacted members of the venire for questioning. The trial court denied both requests. Tuggle's counsel also sought the opportunity to voir dire members of the jury panel individually about pretrial publicity, so as to explore the effects of such publicity without infecting other potential jurors with bias. The trial court again denied counsel's request.

When the first twenty members of the panel were called for voir dire, eight panel members—in the presence of the other panel members—immediately indicated that they had formed an opinion as to petitioner's guilt. These eight panel members were excused. However, of the twenty member panel from which Tuggle's trial jury was ultimately chosen, five members indicated that they had

been contacted before trial by either a member of the Sheriff's Department or by a representative of the local media, ten members indicated that they had read articles about the Tuggle case (including those that referred to a prior homicide and that contained the false report about a previous rape conviction), six acknowledged that they remembered details from the newspaper accounts, and five had served as jurors in the earlier trial and had been contacted by the media or Sheriff's Department to explain their lenient verdict in that case. The court refused to allow individualized voir dire of these jurors.

After general questioning of the jury panel was complete, the trial court declared the panel qualified and told Tuggle's counsel to commence their peremptory strikes. Tuggle's counsel asked for the opportunity to challenge jurors for cause, but the trial court refused to hear any challenges for cause.

On the afternoon of the first day of trial, petitioner's counsel received a copy of the *Smyth County News* of that day, confirming that a number of the jurors who were sitting on Tuggle's jury had been contacted by the paper and asked to explain how they had arrived at a verdict in the murder case which had been tried a few days earlier. One of the jurors sitting on the Tuggle case, Robert Brown, was quoted expressing his disapproval of the decision of the other jurors in the previous case because it was too lenient on the defendant. Brown was later selected to be foreman of the Tuggle jury. Petitioner's counsel moved for a mistrial because of the prejudicial media contact, but the motion was denied.

During the trial, the Commonwealth introduced expert testimony from its pathologist on the rape evidence. The pathologist testified that the victim had been sodomized and had died of a single gunshot wound to the chest. The pathologist further testified that the victim's vagina had been "penetrated or manipulated." However, he acknowledged that no semen was found in the victim's vagina. Nevertheless, because the trial court had denied Tuggle's motion for an expert on the subject, the defense was unable to put on affirmative evidence challenging the rape charge. The jury convicted petitioner of murder during the commission of rape.

During the sentencing phase of petitioner's trial, the prosecution called Dr. Arthur Centor to testify about Tuggle's future dangerousness. Trial counsel objected, but the court overruled the objection and Centor was permitted to testify that Tuggle showed a "high probability of future dangerousness." Because petitioner had been denied the assistance of an independent psychiatric expert, he could not offer evidence to counter the professional testimony of Dr. Centor.

In instructing the jury on the "vileness" aggravating circumstance, the trial court refused Tuggle's request to provide definitions of the terms contained within the statutory definition of vileness. *See* Va.Code § 19.2–264.4(C). The trial court, tracking the language of the statute, simply instructed the jury that it could impose the death penalty if Tuggle's "conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder." *Id.*

In closing argument at the sentencing phase of the trial, the Smyth County prosecutor argued to the jury that Tuggle should receive the death penalty so he would not get out of prison on parole. The prosecutor also stressed the testimony of Dr. Centor that Tuggle posed a future danger to society. The jury found that the Commonwealth had proved both the "future dangerousness" and "vileness" predicates beyond a reasonable doubt and responded with a sentence of death.

*Analysis*

Respondents have raised two grounds for dismissal of Tuggle's petition. First, respondents argue that state judges have considered his claims and their rulings were not "unreasonable." Second, the Commonwealth addresses the merits of Tuggle's claims. The respondents' arguments will be addressed in turn.

I. *The Respondents' First Ground for Dismissal*

The respondents first argue that Tuggle's claims must be dismissed due to the "reason-ableness" doctrine announced by the United States Supreme Court in *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and its progeny. Citing *Butler* and *Bunch v. Thompson,* 949 F.2d 1354 (4th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992), the Commonwealth argues that this court "must defer to the rulings of the Virginia Supreme Court on the merits of Tuggle's claims ... *unless* it can be said that the state court's rulings were not reasonable good-faith interpretations of existing precedent." However, respondents' reliance on these cases is misplaced.

■ *Bunch* and *Butler* stand only for the proposition that a federal court should not apply a "new rule" to overturn a state court's decision which was made at a time when the outcome was "susceptible to debate among reasonable minds." *Butler,* 494 U.S. at 415, 110 S.Ct. at 1217–18; *see Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (announcing the "new rule" doctrine in habeas corpus cases). The concern in these cases is to avoid retroactive application of a "new rule" after a court has rendered a decision based on existing law. *See Teague, supra.* If an action is lawful under the law existing at the time of a prisoner's conviction and appeal, no "new rule" is at issue.

■ In this case, the Commonwealth argues that the "new rule" is applicable with respect to only one claim. Therefore, the holdings of *Bunch* and *Butler* are clearly inapplicable to the other claims and respondents' argument would require petitioner to demonstrate that state judges acted "unreasonably" or in bad faith. Such proof has never been required of a habeas petitioner and this court declines to require such proof now. The respondents' motion to dismiss on this basis will accordingly be denied.

II. *The Merits of Petitioner's Claims*

1) *Tuggle was Improperly Denied the Assistance of Expert Witnesses Necessary for the Preparation of His Defense.*

Petitioner first argues that he was denied the assistance of expert witnesses in violation

of his constitutional rights. Petitioner contends that the trial court's refusal to appoint an independent pathologist and psychiatrist to assist him in his defense constitute independent constitutional violations of petitioner's Fifth, Eighth and Fourteenth Amendment rights. Petitioner argues that these two failures deprived him of due process and equal protection of the law.

Petitioner was appointed counsel to defend his capital charge of murder during the commission of rape because of his poverty. Arrayed against him were a forensic pathologist, two dentists (including a forensic odontologist),[7] and a licensed clinical psychologist. However, all of petitioner's requests for expert assistance to rebut the charges against him were denied.[8] At trial, Tuggle appeared without any expert assistance. His counsel did not even have the benefit of consultation with experts to assist in their examination of the state's key witnesses. Nevertheless, petitioner argues that the court's failures to appoint an independent pathologist and psychiatrist were the most egregious violations because his capital murder conviction hinged on the existence of a rape and the rape evidence was equivocal and because he was unable to rebut the state doctor's evidence as to his "future dangerousness." [9]

Petitioner contends that the extent to which the expert testimony was relied upon by both the trial jury and the appellate courts is evidenced by the decision of the Virginia Supreme Court in its affirmance of Tuggle's conviction and sentence. *Tuggle v. Commonwealth*, 228 Va. 493, 501–2, 511, 513, 517, 323 S.E.2d 539 (1984). Moreover, petitioner asserts that the trial court's denials "rendered his conviction and death sentence inherently unreliable." In fact, petitioner asserts that courts have long recognized that a defendant "may be at an unfair disadvantage if he is unable because of poverty to parry by his own witnesses the thrust of those against him." *Reilly v. Berry*, 250 N.Y. 456, 461, 166 N.E. 165, 167 (1929). Petitioner stresses that the denial of expert assistance in this case, solely because of his poverty, violated his constitutional rights.

### 1. The Psychiatrist Issue

#### a. The Exhaustion Requirement

■ Petitioner contends that this issue has been exhausted because it was preserved at trial and litigated on the merits on appeal. Although respondents contend that the claim is not exhausted because petitioner did not raise the claim himself, it is clear that the Virginia Supreme Court had ample opportunity to pass on the application of *Ake* to this case and, therefore, the claim is exhausted. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (purpose of exhaustion requirement is to ensure that state courts have first opportunity to review federal constitutional challenges to state convictions).

#### b. The Substantive Claim

■ Tuggle's counsel sought the appointment of an independent psychiatrist. When they were rebuffed, they sought leave of court to transfer petitioner to another jail to facilitate a psychiatric examination that they would fund themselves. The trial court again refused. The refusal of the trial court to grant the assistance of a psychiatrist was affirmed by the Virginia Supreme Court on direct appeal. *Tuggle v. Commonwealth*, 228 Va. 493, 323 S.E.2d 539 (1984). That ruling was vacated by the United States Supreme Court in light of the holding of *Ake v. Oklahoma, supra. Tuggle v. Virginia*, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985). *Ake* held, *inter alia*, that when the prosecution in a capital murder proceeding presents

---

7. One of the dentists, Alvin Kagey, was paid $2200 by the court for his testimony.

8. In addition to the trial court's denial of an independent pathologist and psychiatrist, petitioner was also denied the requested assistance of a serologist, a ballistics expert and an odontologist.

9. Petitioner also argues that the refusal to permit him to obtain an independent psychiatric examination deprived him of the ability to develop evidence to use as mitigation during sentencing, specifically the fact that there was a history of mental illness in petitioner's family, that petitioner was hospitalized in a near-coma as an infant, and that, as a young child, petitioner suffered a closed head wound in a fall that rendered him unconscious.

psychiatric evidence of an indigent defendant's future dangerousness, due process requires that the state provide the defendant with the assistance of a psychiatric expert. 470 U.S. at 83–84, 105 S.Ct. at 1096. The case was remanded to the Virginia Supreme Court for reconsideration precisely because Tuggle had been denied the assistance of a psychiatric expert.

On remand, the Virginia Attorney General conceded that the failure to appoint a psychiatrist to assist Tuggle's defense was unconstitutional and that a new sentencing hearing was required. *Tuggle v. Commonwealth,* 230 Va. 99, 334 S.E.2d 838 (1985). The Virginia Supreme Court agreed that Tuggle's sentencing was infected with constitutional error, but rejected the position of both litigants that a new sentencing was needed. Instead, the Virginia Supreme Court found as follows:

> When a jury makes separate findings of specific statutory aggravating circumstances, any one of which could support a sentence of death, and one of the circumstances subsequently is invalidated, the remaining valid circumstance, or circumstances, will support the sentence. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).... In *Tuggle,* the jury made a separate, specific finding that the "vileness" predicate had been proved beyond a reasonable doubt. Although *Ake* requires the conclusion that the trial court erred in denying Tuggle an independent psychiatrist once the Commonwealth had submitted psychiatric evidence on the issue of future dangerousness, we hold, nonetheless, that the error neither impairs nor invalidates the jury's finding of vileness.

230 Va. at 111, 334 S.E.2d 838. Petitioner contends that this ruling was in error because, *inter alia,* it ignored the fact that the sentencing jury heard unconstitutional evidence which it was able to consider in its deliberations.

Respondents reply that the Virginia Supreme Court's decision to uphold the death sentence on the "vileness" ground was consistent with the decisions of the Fourth Circuit interpreting and applying the rule in *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct.

2733, 77 L.Ed.2d 235 (1983). *See Clanton v. Muncy,* 845 F.2d 1238, 1243 (4th Cir.), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988); *J. Briley v. Bass,* 750 F.2d 1238, 1245 (4th Cir.1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985); *Briley v. Bass,* 742 F.2d 155, 165–66 (4th Cir.1984), *cert. denied,* 469 U.S. 893, 105 S.Ct. 270, 83 L.Ed.2d 206 (1984). Again, respondents reliance on these cases is misplaced.

In *Zant,* the jury had found three aggravating factors present to support its sentence of death. On direct appeal, the state supreme court struck one of the aggravating circumstances as unconstitutionally vague, but upheld the death sentence on the ground that the other two aggravating circumstances were sufficient bases for the imposition of the death penalty. The United States Supreme Court concluded that, even though the jury had been instructed on, and found, an unconstitutional aggravating circumstance, all the evidence it considered was properly related to the two valid aggravating circumstances. Thus, the Court found that the jury's deliberation had not been overly affected by the improper aggravating circumstance instruction. The Court recognized, however, that "if an invalid statutory aggravating circumstance were supported by material evidence not properly before the jury, a different case would be presented." 462 U.S. at 887, n. 24, 103 S.Ct. at 2748, n. 24.

In this case, it cannot be said that the evidence presented to the jury was unaffected by the "future dangerousness" aggravating circumstance stricken by the Virginia Supreme Court. Because the state tried Tuggle on the "future dangerousness" aggravator, the jury *did hear* psychological testimony that Tuggle posed a serious threat to society. And, because the state committed the constitutional error of not granting Tuggle's request for psychiatric assistance, the jury *did not hear* testimony from Tuggle to rebut the future dangerousness claim. Thus, unlike *Zant,* the material presented to the Tuggle sentencing jury was seriously skewed because of the constitutional error.[10]

Instead, this case is similar to *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100

---

**10.** The Fourth Circuit cases relied upon by re-

spondents are distinguishable from Tuggle's case

L.Ed.2d 575 (1988). In *Johnson,* a capital defendant was sentenced to death after a jury found three statutory aggravating circumstances, including that the petitioner had been previously convicted of another felony involving violence. The Supreme Court vacated the death sentence because the previous felony relied upon in establishing one aggravating circumstance was an uncounseled conviction, obtained in violation of the constitution. The state attempted to justify affirmation of the death sentence using the same *Zant v. Stephens* argument made by the Commonwealth in this case, namely that there were other valid aggravating circumstances that would independently support the sentence. The Supreme Court unanimously rejected the argument, however, finding that the error "extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible. Here the jury was allowed to consider evidence that has been revealed to be materially inaccurate." 486 U.S. at 590, 108 S.Ct. at 1989.

In Tuggle's case, the *Ake* violation put improper and highly prejudicial material before his sentencing jury. The Commonwealth cites *no* case in which a court has found that an *Ake* violation was cured because there were other statutory aggravating circumstances. This fact is explained because an *Ake* violation cannot be cured by a mere review of the record. The violation, by depriving a defendant of needed assistance, thwarts his very ability to make a record on a critical point or even to rebut the evidence marshalled against him. Therefore, the court finds that the petition must be granted on this ground.

2. *The Pathologist Issue*

a. *The Exhaustion Requirement*

Petitioner contends that this claim is exhausted because it was presented to the Virginia Supreme Court in his state habeas action. Although respondents acknowledge that the claim was raised in state habeas, they contend that the claim is procedurally barred because petitioner failed to raise the claim on direct appeal. Moreover, respondents point out that the Virginia Supreme Court expressly found the claim to be barred under Virginia's procedural default doctrine. *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). The court has reviewed the record and has determined that respondents' assertions are correct.

■ It is well-settled that failure to comply with a state procedural rule will result in a procedural bar, unless the petitioner makes a showing of cause and prejudice or actual innocence. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The cause and prejudice standard applies to noncompliance with appellate rules, including the failure to assign a claim as error on appeal. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In this case, petitioner contends that the cause for his default was his trial attorney's ineffective assistance of counsel at trial. Because attorney error short of constitutional ineffectiveness does not constitute cause, *Carrier,* 477 U.S. at 487–88, 106 S.Ct. at 2644–45, the determination that there is cause for the default necessarily requires a determination that petitioner's attorney was ineffective under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, this claim will be addressed in petitioner's ineffective assistance of counsel claim (Claim 7).

■ As to the actual innocence prong, the court views the failure to appoint an independent pathologist as just one example of the

in the same fashion as *Zant.* While the petitioners in each case challenged the validity of the "vileness" aggravating circumstance found by the trial juries, no improper evidence was admitted in support of the challenged circumstance. In fact, evidence as to "vileness" was properly before the juries because of evidence admitted during the guilt phase of their trials. These cases do not resolve the issue, explicitly raised in *Zant,* of how to analyze a death sentence supported by an unconstitutional aggravator for which evidence was improperly admitted. *See J. Briley v. Bass,* 750 F.2d 1238, 1245 n. 12 (4th Cir.1984) (pointing out that *Zant* result inapplicable if "invalid aggravating circumstance were supported by material evidence improperly before the jury").

trial court's extreme willingness to side-step petitioner's constitutional rights to ensure a conviction. However, by itself, petitioner has failed to demonstrate by clear and convincing evidence that but for the failure to appoint an independent pathologist, no reasonable juror would have found petitioner eligible for the death penalty. *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Consequently, the court finds that the actual innocence prong is not met and the bar cannot be removed on this basis. *See Harris v. Reed, supra.*

> 2) *Tuggle's right to a trial by an impartial jury was violated by the conduct of the trial court and the prosecution.*

■ Petitioner contends that his right to a trial by an impartial jury was violated by, *inter alia,* pre-trial publicity, the failure of the trial court to grant a change of venue, contact of the jurors before the trial by the media and law enforcement officials, the trial court's failure to allow adequate voir dire concerning the jurors' exposure to publicity or other contacts, and the trial court's refusal to allow challenges for cause.

The charge against Tuggle was notorious in Smyth County, a rural county in southwest Virginia.[11] The case provoked an outpouring of articles before trial. A number of the articles discussed the fact that petitioner had been convicted of a prior murder and a few contained the false report that the murder also involved a rape. Other articles mentioned that Tuggle was a suspect in the rape of a teenage girl for which he was never charged. Based on the extensive pretrial publicity, Tuggle moved for a change of venue. The trial court refused to grant the motion, but stated that it would consider the

motion again if it was clear at trial that an impartial jury could not be found.

When the jury was impanelled, eight members of the panel had to be dismissed in the presence of the remaining panel members because they indicated that they had already formed an impression as to Tuggle's guilt. Of the twenty remaining panel members, half indicated that they had read newspaper articles about Tuggle's prior conviction, six acknowledged that they remembered details from the articles, and five had served as jurors in the earlier murder trial and had been contacted by the media or the Sheriff's Department to explain their lenient verdict.[12] However, despite these facts, the court refused individualized voir dire [13] and only allowed trial counsel to ask whether a juror was subject to bias as a result of anything he or she had read.[14]

At the close of voir dire, the judge declared the panel qualified and refused to allow Tuggle's counsel to make any challenges for cause.[15] The extreme restrictions on voir dire left defense counsel bereft of critical information needed to exercise peremptory challenges. Consequently, the jury that ultimately heard the case contained five individuals who had read articles concerning the case, four who had read the article that contained the false rape information, and three who had been subject to pretrial contacts.

Petitioner contends that each of these errors, separately and in combination, deprived him of his right to an impartial jury in violation of his Sixth, Eighth and Fourteenth Amendment rights. Petitioner claims that

11. Even today, almost nine years after the trial, a framed copy of Tuggle's death warrant is on display on the wall of the Circuit Court Record Room. No orders or pleadings from any other case in Smyth County history are displayed publicly in the courthouse.

12. Petitioner contends that this contact was encouraged by the prosecutor because he was so dissatisfied with the jury's verdict in the earlier murder trial.

13. Petitioner contends that the trial court's refusal to allow questioning about knowledge of news-

paper articles outside the presence of the other panel members prevented defense counsel from exploring the effects of pre-trial publicity on the jury panel without exposing the other members of the panel to the prejudicial information.

14. Petitioner contends that the limitations on voir dire were in violation of Va.Code § 8.01–358.

15. The Virginia Supreme Court acknowledged that such refusal was error. *Tuggle v. Commonwealth,* 228 Va. at 505–06, 323 S.E.2d 539.

these issues have all been exhausted because they were raised at trial and presented to the Virginia Supreme Court.[16]

The pretrial influences on Tuggle's jury and the trial court's restriction upon counsel's efforts to discern them bear great similarity to many cases in which courts have found that a defendant's right to an impartial jury has been abrogated. In the area of improper contact with jurors, the Fourth Circuit reversed a capital sentence due to a comment made by a third party to a juror during the course of trial. *Stockton v. Virginia*, 852 F.2d 740 (4th Cir.1988) (during criminal trial, any private communication by outsider with juror is presumptively prejudicial), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). In this case, the contacts of media with members of Tuggle's jury were improper.

As to petitioner's voir dire claim, the United States Supreme Court has held that adequate voir dire is part of a defendant's Sixth Amendment right to an impartial jury. *Morgan v. Illinois*, —— U.S. ——, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1991). The Fourth Circuit has also recognized that a trial court abuses its discretion if its limitation of voir dire hinders "defendant's opportunity to make reasonable use of his challenges." *United States v. Brown*, 799 F.2d 134, 136 (4th Cir. 1986). The constitutional entitlement to adequate voir dire is particularly critical in a capital murder trial. *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). Although a capital defendant is not automatically entitled to individualized voir dire on pre-trial publicity, such voir dire might be necessitated where a significant number of panel members indicated a pre-existing opinion about the case and where the crime occurred in a rural area. *Mu'Min v. Virginia*, 500 U.S. 415, 427–32, 111 S.Ct. 1899, 1907–08, 114 L.Ed.2d 493 (1991).

Not only are the factors discussed in *Mu'Min* present in this case, but the complete failure of the trial court to allow any challenges for cause deprived Tuggle of the normal protections inherent in the jury selection process. The complete failure of the trial court to allow sufficient inquiry prevented Tuggle's counsel from protecting Tuggle's right to an impartial jury. The failures were particularly notable because this was a capital murder trial. Such errors violated Tuggle's Sixth, Eighth and Fourteenth Amendment rights.

Although respondents contend that the allegations petitioner raises in this claim all involve the propriety of determinations made by the trial judge which should be "reviewed for abuse of discretion only," *see, e.g., United States v. Smith*, 918 F.2d 1551 (11th Cir. 1990), it is clear that such abuse of discretion is present in this case. The court will grant the petitioner's petition for writ of habeas corpus on this basis.

3) *There was insufficient evidence to convict Tuggle of murder during the commission of rape.*[17]

The capital murder charge for which Tuggle was convicted was murder during or subsequent to the rape of the victim. Va.Code § 18.2–31(e). Had the murder been unaccompanied with a rape charge, it would not have been capital murder in Virginia. Thus, the element of rape was critical to this case. Petitioner contends that the evidence in the case was insufficient to warrant a conviction for rape.

---

**16.** Petitioner acknowledges that the Virginia Supreme Court held that any claim of prosecutorial misconduct was procedurally barred because it was not raised at trial or on direct appeal. However, petitioner contends that this is not a bar because the procedural default rule applies only to claims for which there was a "full and fair opportunity" to have a hearing at trial. *Slayton*, 215 Va. at 29, 205 S.E.2d 680. In this case, the trial court's refusal to allow any voir dire on the subject and refusal to summons the reporter who made the contact left the defense unable to discover at trial the prosecution's role in encouraging the jury contact. Thus, there is no procedural bar. *See DiPaola v. Riddle*, 581 F.2d 1111, 1113–14 (4th Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

**17.** This claim has indisputably been exhausted through presentation to the Virginia Supreme Court on direct appeal.

Although petitioner acknowledges that semen was found in the victim's rectum, no seminal fluid was found in or around the vagina.[18] There was a small bruise at the entrance to the vagina, but there was no testimony concerning when the bruise occurred. The state's pathologist, Dr. Oxley, said that the bruise was consistent with penetration by "something, a penis, a finger, an object, something." [19]

■ In Virginia, a rape conviction requires evidence that the vagina was penetrated by the penis. The lack of seminal fluid is a strong circumstance indicating that there was no penetration. *McCall v. Commonwealth*, 192 Va. 422, 65 S.E.2d 540 (1951); *Coles v. Peyton*, 389 F.2d 224 (4th Cir.), *cert. denied*, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). The Virginia Supreme Court has, in non-capital cases, reversed rape convictions even where they involve vaginal injury and unequivocal expert testimony that penetration of the vagina by a penis had occurred. *Strawderman v. Commonwealth*, 200 Va. 855, 108 S.E.2d 376 (1959) (finding it to be "common knowledge" that vaginal injuries could have been caused by means other than penetration, such as fondling).

Petitioner argues that, given the lack of seminal fluid in or around the vagina and the lack of any injury or bruise in the vagina, there was insufficient evidence to convict Tuggle of rape. Petitioner contends that this claim is particularly critical given the trial court's refusal to allow the appointment of an independent pathologist to help Tuggle defend against the rape charge. Petitioner finally contends that, given the scant evidence of rape, there is a strong likelihood that defense counsel, with the assistance of an independent pathologist, could have successfully defended the rape charge.

Respondents, on the other hand, assert that reasonable jurists could and did find sufficient evidence to conclude that a rape occurred in this case. Respondents argue that under *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979), a federal habeas applicant is entitled to relief only if it is found upon a review of the record evidence adduced at trial, in the light most favorable to the prosecution, that no rational trier of fact could have found guilt beyond a reasonable doubt. Respondents argue that the Virginia Supreme Court's judgment that the evidence was sufficient is "entitled to deference, by this court." *Id.* at 322, 99 S.Ct. at 2790–91; *see* 42 U.S.C. § 2254(d).[20]

Even apart from Tuggle's inability to produce his own trial evidence due to the denial of expert assistance, the evidence that was produced cannot show guilt beyond a reasonable doubt under the elements of the crime of rape as defined and applied by the Virginia courts. In this case, there was no semen in the vagina. There were small bruises found *outside* the vagina, but there were no injuries found in the vagina and there was no testimony concerning when the bruises occurred. The state pathologist testified that the bruises could have been caused by penetration of "something, a penis, a finger, an object, something." With such evidence, no rational fact-finder could have found proof beyond a reasonable doubt. That the jury found rape in this case is most likely explained by the inaccurate pre-trial information concerning other rapes supposedly committed by Tuggle, as well as the public pressure surrounding this notorious case, which was heightened by press contacts with jurors, prior to trial. The court grants the petitioner's petition for habeas relief on this ground.

18. At the time Tuggle was tried, homicide accompanied by sodomy was not a capital crime in Virginia.

19. At the preliminary hearing, the state examiner had testified that the bruise was equally consistent with penetration or manipulation.

20. The Virginia Supreme Court held that the evidence was uncontroverted that petitioner had exposed his penis and that the victim's vagina

had been penetrated by "something." Moreover, the Court noted that "no evidence in the present case reasonably suggests penetration of the victim's vagina by an object other than the defendant's penis." 228 Va. at 511, 323 S.E.2d at 550. Accordingly, the Court held that "the evidence supports the jury's finding of forcible sexual intercourse." 228 Va. at 512, 323 S.E.2d at 550 (citations omitted).

4) *The trial court erred in allowing Dr. Arthur Centor to testify that Tuggle posed a "future danger" to society because such testimony was based on discussions with Tuggle outside the presence of counsel without a waiver of his Fifth and Sixth Amendment rights.*

 Petitioner next contends that the state mental health examiner exceeded the scope of the court's order, as well as petitioner's waiver, when it examined him as to "future dangerousness," rather than limiting the examination to the two issues of competency to stand trial and mental state at the time of the offense.[21] Petitioner contends that, prior to trial, his trial counsel had clarified with the Commonwealth's Attorney and the staff at the hospital that, in accordance with Va.Code § 19.2–169.7, nothing Tuggle said would be used against him at trial unless he elected to assert an insanity defense. Based on the Virginia Code provision and on the conversation with the Attorney General's office, his counsel advised him to cooperate with the evaluation.

Petitioner alleges that, either independently or at the urging of the prosecution, Dr. Centor expanded his evaluation of Tuggle to include the issue of whether he posed a future danger to society.[22] No notice of this intent was provided to Tuggle's counsel, nor did Centor explain to Tuggle that he was expanding his examination into a new topic area not disclosed to counsel. However, Centor did ask Tuggle to sign a waiver form and Tuggle complied.[23]

After conducting the evaluation, Centor informed the Commonwealth's Attorney that he had developed an opinion concerning Tuggle's future dangerousness. Despite the fact that Tuggle did not defend the case based on his mental state, the prosecutor called Centor and he was permitted to testify at trial that there was a high probability that Tuggle would commit criminal acts of violence in the future. In his closing sentencing argument, the Commonwealth's Attorney relied heavily on Centor's testimony. In addition, the Virginia Supreme Court relied on the testimony in upholding Tuggle's death sentence.

Petitioner contends that the testimony of Dr. Centor violated the trial court's order, Virginia law and the agreement between defense counsel and the prosecution. Petitioner further contends that the illegal testimony of Dr. Centor was particularly damaging to him because he was unable to effectively cross-examine Dr. Centor on his testimony, because he was denied the assistance of an independent psychiatrist to present a defense to the "future dangerousness" aggravator or to develop mitigating evidence to counter the prosecution's sentencing evidence.

Respondents contend that, prior to his examination, petitioner was fully apprised of his rights, he understood his rights, and that he signed a rights waiver form. Respondents argue that the Virginia Supreme Court found that Tuggle's waiver was done voluntarily, knowingly and intelligently. 228 Va. at 514, 323 S.E.2d at 551–52. Respondents assert that this finding of fact is entitled to a presumption of correctness by this court. *See* 28 U.S.C.A. § 2254(d).

In *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), a defendant in a capital case was sent by the court for an examination of his mental competency. Although no competency defense was raised at trial, the psychiatrist took the stand in the sentencing phase to testify that the defendant represented a danger to society. The Supreme Court reversed the sentence and found that the testimony was obtained in violation of Smith's Fifth and Sixth Amendment rights. Smith's Fifth Amendment rights were violated because he received no clear warning that his statements to the state

---

**21.** This claim is exhausted because it was presented to the Virginia Supreme Court in the direct appeal of Tuggle's case.

**22.** Petitioner contends that this action was taken without court order and without advising Tuggle's trial counsel that such an evaluation was being made. Petitioner further contends that, had trial counsel known such an evaluation was

going to be made, they would have advised Tuggle not to cooperate with such an evaluation.

**23.** Petitioner argues that the waiver form appeared innocuous because Tuggle had been informed by his lawyers that he would be waiving his Fifth Amendment rights only if he put his mental state in issue at trial.

medical examiner could be used against him. His Sixth Amendment right to counsel was violated because his defense counsel had not been informed of the investigation. As the Supreme Court found:

> Defense counsel ... were not notified in advance that the psychiatric investigation would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.

451 U.S. at 471, 101 S.Ct. at 1877.[24]

However, the facts of *Estelle v. Smith* are not significantly different from this case and its ruling is equally applicable to the instant case. While Tuggle's counsel were aware of the examination, it had been expressly limited to issues other than future dangerousness. Under state law, statements made by Tuggle in the examination would be admissible *if* he put his mental state in issue. But, the same law (as well as the state's agreement) made clear such statements could not be used against Tuggle if his mental state was not used as a defense. Va.Code Ann. § 19.2–169.

Because Tuggle had been assured of the limited purpose of the investigation and the protection against self-incrimination, his counsel allowed the examination to occur. Just as in *Estelle v. Smith*, they had no knowledge of the state's intent to trap their client on the "future dangerousness" issue and thus could not advise him on how to deal with the issue.

The sole argument made by the Commonwealth is that Tuggle waived any Fifth or Sixth Amendment rights in his discussion with Centor. The Virginia Supreme Court reached a similar conclusion, although the

Court omitted mention of the facts that Centor's examination of Tuggle went beyond the areas ordered by the trial court, that defense counsel were given no notice of this examination, and that the "waiver" Tuggle signed was misrepresented to him and concealed from counsel. *Tuggle v. Commonwealth,* 228 Va. at 514, 323 S.E.2d at 551–52. Thus, despite the Supreme Court's finding, the waiver could not have been voluntarily, knowingly and intelligently made. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).[25] Consequently, the petitioner's petition for writ of habeas corpus will be granted on this basis.

5) *The prosecutor argued that Tuggle should be put to death because he would otherwise be released on parole.*

a. *Exhaustion of the Claim*

Petitioner claims that this issue is exhausted because it was presented to the Virginia Supreme Court in Tuggle's appeal from the denial of state habeas corpus relief. Petitioner acknowledges that the Attorney General's Office argued that the case was defaulted on the appeal, but asserts that the Supreme Court rejected the argument on the merits anyway.

It is clear that the Virginia Supreme Court did consider the claim on the merits, *Tuggle v. Bair,* No. 910932 (Va. Nov. 14, 1991), and, therefore, the claim is not barred. *See Wainwright v. Witt,* 469 U.S. 412, 431 n. 11, 105 S.Ct. 844, 855 n. 11, 83 L.Ed.2d 841 (1985); *Briley,* 750 F.2d at 1242 n. 6. Respondents contend that the claim is still procedurally defaulted because Tuggle did not base the argument on federal constitutional grounds in state court. However, based on the court's review of the record, petitioner

---

**24.** The Court has since limited *Estelle* to the facts in that case—"the trial judge had ordered, *sua sponte,* the psychiatric examination, and Smith neither had asserted an insanity defense nor had offered psychiatric evidence at trial." *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

**25.** Even assuming the Virginia Supreme Court's ruling was a factual finding, it is not entitled to a presumption of correctness under 28 U.S.C. § 2254(d), because the court never inquired into

the facts concerning the waiver allegation. 28 U.S.C. § 2254(d)(1) and (2). The trial court simply allowed the testimony without giving any factual ruling whatsoever to support its admissibility. Moreover, as is described through this opinion, Tuggle was otherwise denied his due process rights in the state trial. 28 U.S.C. § 2254(d)(7). Finally, an examination of the record as a whole clearly demonstrates that the Virginia Supreme Court's finding of waiver is not fairly supported. 28 U.S.C. § 2254(d)(8).

specifically claimed that the prosecutor's closing argument violated his Eighth and Fourteenth Amendment rights. Therefore, there is no procedural default barring consideration of this claim.

### b. *The Substance of the Claim*

Petitioner argues that his conviction should be overturned because, during the sentencing phase of the trial, the Commonwealth's Attorney made repeated references to the probability that Tuggle would be released on parole if he were given any sentence other than death.[26] Petitioner contends that the references to future parole were improper and injected unfair prejudice and unreliability into Tuggle's criminal sentencing.

■ These comments were a clear violation of Virginia law, *Peterson v. Commonwealth,* 225 Va. 289, 302 S.E.2d 520, *cert. denied* 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983) (capital case); *Caldwell v. Commonwealth,* 221 Va. 291, 269 S.E.2d 811 (1980), but violations of state law do not state a federal constitutional claim. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Therefore, the court finds that the argument did not violate any of the petitioner's constitutional rights and the respondents' motion to dismiss will accordingly be granted as to this claim.

### 6) *The "vileness" instruction given to the jury was unconstitutionally vague.*

■ Petitioner argues that the "vileness" aggravating circumstance instruction given in his case was unconstitutionally vague.[27] In instructing the jury on the "vileness" aggravating circumstance, the trial court refused Tuggle's request to provide definitions of the terms "aggravated battery" and "depravity of mind" contained within the statutory definition of vileness. *See* Va.Code § 19.2–264.-4(C). Instead, the trial court simply instructed the jury that it could impose the death penalty if Tuggle's "conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder." Petitioner contends that the court's refusal to allow the terms to be defined compounded the vagueness problem and violated the requirements of the Eighth and Fourteenth Amendments.

Respondents argue that the vagueness of Virginia's "vileness" aggravator was rejected by the Virginia Supreme Court in this case, *see* 228 Va. at 515–16, 323 S.E.2d at 52–53, and has also been repeatedly rejected by the Fourth Circuit Court of Appeals in earlier cases. The cases respondents rely upon for this proposition are inapposite. In those cases, the judge gave a limiting instruction to the Virginia statutory definition of "vileness." *See, e.g., Turner v. Bass,* 753 F.2d 342, 352 (1985), *rev'd on other grounds,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). In this case, no limiting instruction was given. Instead, despite petitioner's requests, only the "vileness" definition which the United States Supreme Court had already found to be unconstitutional was provided to the jury. *See Godfrey v. Georgia,* 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). Because there is a greater need for reliability in the determination that death is the appropriate punishment in a specific case, *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976), it was error for the trial court to refuse to provide

---

**26.** Specifically, the Commonwealth's Attorney argued:

> But with everything that's been before you and using your own common sense and your own knowledge and the fact that he was tried twelve years ago on murder and they found him guilty of second degree then, and now he's back here again on another horrible offense, the same way, under similar circumstances. The fact that he's here in less time that he was even sentenced to ought to be a message to you as to what will happen if he doesn't get the death sentence. The only thing I want to state to you and let it be known to everybody here and so there is no misunderstanding as to where we stand, is that I can only say God forbid if you give him any type of sentence that permits him to get out of here and do this again, and anything less than death is going to do it.

**27.** This issue has been exhausted through presentation to the Virginia Supreme Court in the direct appeal of Tuggle's case.

limiting instructions. *See Godfrey, supra.* It is especially important in this case that the finding of vileness be correct and founded on a constitutional basis because it is the sole aggravator upon which the Commonwealth now relies to uphold the death sentence. Therefore, Tuggle's petition for habeas relief will be granted on this claim.

> 7) *Tuggle's appointed trial counsel rendered ineffective assistance of counsel to Tuggle at trial because they were prohibited by the trial court from presenting the kind of defense to which their client was constitutionally entitled.*

 Petitioner next contends that his appointed counsel were denied the ability to adequately represent him.[28] Specifically, petitioner contends that his trial counsel were paid minimally for their services, were denied any funds to use in hiring experts to defend him, were denied a change of venue, were deprived of the ability to conduct the minimum necessary voir dire of jurors, were not allowed challenges for cause, and were denied proper jury instructions for petitioner. Petitioner emphasizes that the trial court even refused to accommodate trial counsel's request to spend their own funds to hire an independent psychiatrist.

In *Williams v. Martin,* 618 F.2d 1021 (4th Cir.1980), the Fourth Circuit recognized that a trial court's refusal to provide expert assistance upon the request of an attorney so limited the effectiveness of that attorney's defense that it violated the Sixth Amendment right to counsel. Similarly, Tuggle's counsel was rendered ineffective by the court rulings stripping them of the ability to fairly defend their client. The petitioner's petition will be granted as to this claim.

 Petitioner also argues that trial counsel was ineffective in failing to appeal the trial court's denial of their request for an expert pathologist. The Sixth and Fourteenth Amendments protect a criminal defendant's right to the effective assistance of counsel at trial. To demonstrate that this right has been denied, a petitioner must sat-

isfy the two-part test announced in *Strickland v. Washington, supra.* First, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* 466 U.S. at 688, 104 S.Ct. at 2065. In determining whether the petitioner has made this showing, a reviewing court must give great deference to counsel's tactical decisions because there is a strong presumption that counsel's conduct was within the wide range of objectively reasonable assistance. *Id.* at 688–89, 104 S.Ct. at 2065. Reviewing courts as a general rule are reluctant to assume the task of second-guessing the tactics of defense attorneys. *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir.1977).

Second, the petitioner must demonstrate prejudice to his defense. He must show that, but for counsel's errors, there was a reasonable probability that the result of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is one which undermines confidence in the outcome of the trial. *Id.*

Petitioner asserts that clear case law in the Fourth Circuit at the time established his right to an independent pathologist to assist in his defense and the assistance was necessary to rebut the rape charge. *Williams v. Martin, supra;* see *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (indigent defendant in civil paternity case entitled to state-funded expertise). In response to this argument, respondents maintain that, not only was there no clearly established right for petitioner to receive the assistance of an independent pathologist, but that, under *Strickland, supra,* petitioner's trial counsel were not ineffective in failing to raise this issue on appeal, since forty other assignments of error were raised and twenty questions presented on direct appeal. Instead, respondents contend that "counsels' decision as to which potential issues to raise or not to raise was based on counsels' best professional judgment."

In this case, it does not appear that petitioner's right to the assistance of an indepen-

---

**28.** These issues have been exhausted through presentation to the Virginia Supreme Court in his appeal from the circuit court's denial of habeas corpus relief.

dent pathologist was so clear that trial counsel was ineffective in failing to pursue this issue, while choosing instead to pursue forty other issues. *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065. Nor does it appear that petitioner would be able to prove prejudice in this case. It has been almost ten years since the offense for which Tuggle was convicted occurred. Thus, it would now be impossible to obtain an independent pathologist report on the rape evidence. While it is clearly not petitioner's fault that no pathologist was appointed in his case and while the appointment of a pathologist may have contributed greatly to his defense, there is no basis upon which the court can rely in determining that the pathologist would have testified in a manner different than the state pathologist. Consequently, petitioner has failed to demonstrate that he has been prejudiced by his attorney's failure to appeal the pathologist issue, *Strickland, supra,* and the petition for habeas relief will not be granted on this basis.[29]

8) *Tuggle's conviction and sentence were so infected with error as to deprive him of the protections provided by the Eighth Amendment.*

Petitioner next contends that each of the issues discussed above is sufficient by itself to compel relief, but together they completely undermine the reliability of Tuggle's conviction and sentence so as to violate his Eighth and Fourteenth Amendment rights." Respondents point to *Briley v. Bass, supra,* for the proposition that a totality of the circumstances claim will not survive if the asserted grounds are insufficient by themselves to support habeas relief. Although it may be true that such an argument is "without a shred of legal validity," in this case, many of petitioner's claims, by themselves, *are* sufficient to state a claim. However,

rather than deciding whether this asserted ground states a claim, the court will defer ruling on this claim and will instead base its ruling on the individual asserted grounds for relief.

9) *The Virginia Supreme Court upheld Tuggle's death sentence after striking the "future dangerousness" aggravating circumstance.*

■ Petitioner additionally argues that the Virginia Supreme Court unconstitutionally upheld his death sentence solely on the basis of the "vileness" aggravating circumstance.[30] Despite their acknowledgement that the sentencing was unconstitutional because petitioner had been denied the assistance of an independent psychiatrist, *see Ake v. Oklahoma, supra,* the Supreme Court merely struck the "future dangerousness" aggravating circumstance and determined that the "vileness" predicate was sufficient to uphold the death sentence. *Tuggle v. Commonwealth,* 230 Va. 99, 334 S.E.2d 838 (1985). The court failed to mention that Tuggle's jury had heard unconstitutional evidence, that Tuggle had been denied the chance to produce evidence to rebut the psychiatric testimony, that Tuggle had been denied the chance to develop his own mitigating evidence through the required psychiatric assistance, or that the prosecutor had repeatedly relied on the psychiatric evidence on future dangerousness as argument for giving Tuggle the death sentence.

Petitioner argues that, because the jury heard the unconstitutional evidence, the mere striking of the "future dangerousness" aggravator could not cure the constitutional error that was committed in Tuggle's trial. Petitioner further argues that the Virginia Supreme Court's decision to affirm Tuggle's death sentence despite the *Ake* error was in

**29.** Since attorney error short of constitutional ineffectiveness does not constitute cause for default, *Carrier, supra,* petitioner has failed to show the necessary cause and prejudice to overcome his procedural default which would enable the court to consider his claim on the merits.

**30.** Petitioner claims that this issue has been exhausted because the effect of the *Ake* violation was fully adjudicated by the Virginia Supreme

Court. Respondent maintains that petitioner has defaulted on this claim, because he never raised the issue in state court. Therefore, respondent claims that petitioner is barred from raising them for the first time in federal habeas. However, it is clear that the Supreme Court has passed on this issue with respect to petitioner's case and, therefore, the claim is exhausted. *See Preiser, supra.*

complete violation of Virginia's own statute guaranteeing sentence review in a capital case. Va.Code § 17–110.1.[31] In addition, Petitioner asserts that the sentence was clearly imposed "under the influence of ... prejudice or any other arbitrary factor" because the jury imposed it after hearing illegal testimony and argument concerning Tuggle's future dangerousness.

Respondent makes no defense to these claims, except to allege that the claim is not exhausted and is barred by the "new rule" doctrine. As discussed *supra*, the claim has been properly exhausted, so that argument is without merit. The court similarly finds no merit in the respondents' "new rule" allegation. Although respondent contends that *Teague v. Lane, supra*, bars consideration of the *Ake* violation, the resolution of that claim does not rely on any new rule, but rather on *Ake* itself. Since *Ake* was decided before petitioner's conviction became final, the court is not barred from consideration of this claim. *See Teague, supra.*

Petitioner finally argues that the sentence violated Va.Code § 17–110.1 because the Virginia Supreme court performed no analysis to determine whether the sentence was disproportionate or excessive. Petitioner acknowledges that the court did perform an analysis on direct appeal, comparing Tuggle's case with others in which the jury found both statutory aggravating circumstances, but that, after striking the "future dangerousness" aggravator, the Supreme Court did not compare Tuggle's case—in which the victim died of a single gunshot wound—with other capital crimes in which the "vileness" aggravator was the sole factor.

 The United States Supreme Court has held that such appellate review procedures are a critical part of the protections that must shape the imposition of the death penalty. *Gregg v. Georgia*, 428 U.S.

153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). However, a federal district court entertaining a habeas corpus petition does not sit as a court of appeals over a state supreme court. *See Holloway v. Woodard*, 655 F.Supp. 1245, 1249 (W.D.N.C.1987). While the proportionality issue is not cognizable in federal habeas because the Constitution does not require proportionality review, *Pulley v. Harris*, 465 U.S. 37, 43–44, 104 S.Ct. 871, 875–76, 79 L.Ed.2d 29 (1984); *Briley v. Bass*, 584 F.Supp. 807, 835, meaningful appellate review is constitutionally required in capital cases. Therefore, the complete absence of analysis in the Tuggle remand constitutes an independent constitutional violation. *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). The petition for habeas relief will accordingly be granted on this basis.

10) *The Virginia death penalty statute is unconstitutional because of the vagueness of the "vileness" aggravating circumstance.*

Petitioner finally claims that Virginia's "vileness" aggravating circumstance is so vague and standardless as to be in violation of the Eighth and Fourteenth Amendments.[32] Although the petitioner sets forth some strong arguments as to the invalidity of the "vileness" aggravating factor, the court declines to hold the statute unconstitutional, especially since so many other constitutional violations are present in this case which mandate that the petition for writ of habeas corpus be granted. The respondents' motion to dismiss this claim will accordingly be denied.

Based on the foregoing, the court finds that the result of petitioner's conviction for murder in the commission of rape is inherently unreliable because it is the product of several violations of petitioner's constitutional rights. Consequently, Tuggle's petition

---

**31.** This section provides as follows:
In addition to consideration of any errors in the trial enumerated by appeal, the [Supreme Court] shall consider and determine:
1. Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; *and*
2. Whether the sentence of death is excessive or disproportionate to the penalty in similar

cases, considering both the crime and defendant.
*See* Va.Code § 17–110.1(C).

**32.** This claim is exhausted because it was presented to the Virginia Supreme Court on direct appeal.

for writ of habeas corpus is granted. It is so ORDERED.

The clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to counsel for petitioner and to counsel of record for the defendants.